**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**George D. MERIWETHER, Defendant-
Appellant.**

**No. 28445.**

United States Court of Appeals,
Fifth Circuit.

March 26, 1971.

James H. White, III, Birmingham, Ala. (Ct.Apptd.), for appellant.

Wayman G. Sherrer, U. S. Atty., R. Macey Taylor, Asst. U. S. Atty., Birmingham, Ala., for appellee.

Before RIVES, WISDOM and GOD-BOLD, Circuit Judges.

RIVES, Circuit Judge.

Meriwether was convicted upon a jury trial on a three-count indictment charging him with offenses of willfully attempting to evade and defeat his and his wife's federal income tax for the calendar years 1962, 1963 and 1964 by filing false and fraudulent joint income tax returns on behalf of himself and his wife in violation of Section 7201, I.R.C., 26 U.S. C. § 7201.[1] The District Court sentenced Meriwether on each count to three years' imprisonment and a fine of $10,000.00, the sentences to run concurrently. Meriwether was also taxed with the costs of prosecution in the amount of $1,875.52.

During the indictment years and for some years theretofore, Meriwether was Vice President of the First National Bank of Tuscaloosa, Alabama, in charge of the installment loan department. The prosecution undertook to prove that he demanded and received sums of money from certain bank customers as a condition for handling their commercial papers, and that the sums so received were never reported as income. Meriwether insisted on waiving counsel and defending himself. His appeal is in forma pauperis, and on appeal he is represented by able court-appointed counsel.

After the trial was well under way, in the course of a conference in chambers, the Court instructed Meriwether not to ask the next Government witness questions by way of impeachment which the Court ruled in advance would be inadmissible. Meriwether asked, "May I object to that just to get it in the record?" and the Court responded, "Yes; I will give you an objection to anything that is done, whether you take it or not." [Tr. 145] On Appeal, court-appointed counsel construes that statement to grant Meriwether "a continuing objection to anything done at the trial, whether or not Appellant entered an objection for the record." [Appellant's brief, p. 8.] As a result, court-appointed appellate counsel has literally searched the record for error, whether preserved for review or not.[2] To our surprise, the Government does not challenge that extreme interpretation of the Court's remark. Nonetheless, a careful reading of the record convinces us that it is wholly unwarranted. Read in context, it seems clear that the Court intended its remark

1. For the year 1962, Count One charged Meriwether reported that their joint taxable income was $9,522.72, on which the tax owed was $2,065.91, when he well knew that their joint taxable income was $16,542.72, on which the tax owed was $4,104.52. For the year 1963, Count Two charged the reported taxable income to be $9,803.67 as compared with actual income of $24,005.58, and reported tax to be $2,137.04 as against tax owed, $6,790.40. For the year 1964, the figures charged in Count Three were: income

reported $6,274.32 as against actual joint taxable income of $8,948.62; tax reported $1,127.86 as against tax owed, $1,674.43.

2. The "Argument" section of Appellant's Brief begins as follows:
"The comments on the evidence in this brief are based on the fact that the Trial Court gave Appellant an objection to 'anything that is done' whether he took it or not. (Tr. 145). Appellant relies upon this statement in making the assignments of error on this

to be limited to the particular testimony then being discussed, and that Meriwether so understood and was not misled. Thereafter the Court continued to note "no objections" in admitting evidence [see, e. g., Tr. 169], and Meriwether continued, as he had theretofore, to make his formal objections [see, e. g., Tr. 171, 182, 194, 195, 215, 226, 321, 328, 457].

Among Meriwether's objections were repeated complaints that the Court erred in limiting the bank records and documents which he sought for use in presenting his defense. Meriwether had caused a subpoena duces tecum to be issued to Frank M. Moody, President of the Bank, to bring with him bank records listed in 13 pages attached to the subpoena. On Moody's "Motion to Quash or Modify Subpoena," the Judge endorsed in pen "July 22, Modify to require production only of documents subpoenaed by Gov't." Meriwether claims to have understood that the Judge had declined to let him use Moody as a witness. We do not think that the Judge intended any such extreme ruling, but we find it unnecessary to review the affidavits pro and con on this subject, since the case must be reversed for other reasons. Upon a new trial we are confident that the Court will see that Meriwether or his counsel is furnished with access to all of the Bank records needed for the preparation of his defense.

The indictment was returned on May 7, 1969, more than six years after April 12, 1963, the date on which Count One charges that Meriwether filed his and his wife's joint 1962 income tax return, and is barred by limitations under 26 U.S.C. § 6531 unless saved by the provision: "Where a complaint is instituted before a commissioner of the United States within the period above limited, the time shall be extended until the date which is 9 months after the date of the making of the complaint before the commissioner of the United States."

Meriwether moved to dismiss Count One upon the ground that it was barred by the six-year statute of limitation and was not saved by a complaint filed on April 3, 1969 [R. 14, et seq.]. That complaint does not appear in the record on appeal, nor does it appear that the District Court ever ruled on Meriwether's motion to dismiss. Meriwether argues that the complaint failed to satisfy the probable cause requirement of Rule 4(a) of the Federal Rules of Criminal Procedure, and that a postponement without his consent denied him the preliminary examination to which he was entitled under Rule 5. For all that is shown by the record on appeal, Count One is barred by the statute of limitation. However, we leave that question to be determined on remand when a full record can be developed, and the District Court can rule in accordance with the teachings of Jaben v. United States, 1965, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345.

██ In response to a motion for bill of particulars filed by Meriwether, the Government stated that it would use two methods of proving his corrected taxable income: First, the "Specific Items Method," and, second, the "Comparative Net Worth Method." Under the "specific items" method, the proof was adequate for submission to the jury from direct evidence of payments to Meriwether by Hall [Tr. 69], Dozier [Tr. 149], and circumstantial evidence of payments by Owens [Tr. 246], Rivers [Tr. 295] and Carl [Tr. 411]. Under its "net worth" theory, however, the Government failed to establish with reasonable certainty a definite opening net worth of the *joint income* of Meriwether and his wife. Indeed, it came near ignoring Mrs. Meriwether. It did introduce her Alabama income tax returns for the years 1955 to 1963, but otherwise made no attempt to ascertain her net worth. As to Meriwether's cash on hand, the Government seems to have relied solely on Meriweth-

appeal, including the assignments of error relating to the jury charge.

"Filed as Appendix B to this brief are sworn statements and affidavits of

Appellant and others relating to evidence that might have been raised if Appellant had moved for a new trial. * * *"

er's statement to the revenue agent that he never kept more than $3,000.00 in cash on hand [Tr. 479, 497]. The revenue agent asked Meriwether "whether or not he had ever received any money from a man named Henry Dozier." [Tr. 478] It may be, therefore, that the investigation had focused on Meriwether's criminal responsibility. Meriwether failed to object to the introduction of that admission, and we need not now decide on its admissibility in the absence of *Miranda* warnings.[3] Since the question is not properly preserved for review on this appeal, we leave it to be determined by the District Court on remand.

■ Further, the District Court should have charged the jury that Meriwether's admission as to his beginning cash balance must be corroborated.[4] True, Meriwether did not object to the Court's charge to the jury. The Court had, however, assured him that, "I will try to cover all of the charges that I think should be given to the jury to cover the law," which, under the circumstances, obviated the necessity of an objection.

The District Attorney in his closing argument urged the jury to consider both the specific items proof and the net worth proof, concluding:

> "So, I say to you that you may consider it on either or both methods and either one you use please bear in mind that there has been no contrary testimony offered either to the specific items of unreported income or to the net worth computations." [Supp. Rec. p. 40.][5]

The Court's oral charge to the jury as originally delivered undertook but failed to properly instruct the jury as to the law on the net worth method of proof, particularly as to the necessity of corroboration of Meriwether's admission of the amount of cash on hand, and as to the necessity of proof of Mrs. Meriwether's net worth. It failed ever to mention the specific items method of proof. The following colloquy ensued:

> "THE COURT: Government have any objections to the Court's charge to the jury?
>
> "MR. TAYLOR [Assistant U. S. Attorney]: If the court please, no objection whatsoever. I would like to inquire of the court, I may have missed it, I don't believe that Your Honor instructed the jury on the elements of the offense related to the specific items of unreported income method of proof as opposed to the net worth theory which Your Honor did describe in great detail; if I am incorrect in my observation, I would like not to object, but to suggest that the just [sic] be instructed with regard to the proof of the case, if they believe the evidence, relying solely on the specific items.
>
> "THE COURT: I believe under the state of the evidence in this case, a verdict could be based on either the net worth theory or specific item; I didn't bear down on it; I did tell them that the Government had chosen both methods and you in your argument set that out.
>
> "I will call them back and instruct them in accordance—" [Tr. 723–724]

Upon the jury's return, the District Court gave one paragraph of instructions:

> "I overlooked instructing you that the Government has presented two methods of proof, one direct and the other net worth theory. And I instructed you at length on the net worth

---

3. Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Compare Kohatsu v. United States, 9 Cir. 1965, 351 F.2d 898 with United States v. Dickerson, 7 Cir. 1969, 413 F.2d 1111.

4. See Smith v. United States, 1954, 348 U.S. 147, 154–156, 75 S.Ct. 194, 99 L.Ed. 192; United States v. Calderon, 1954, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202; Merritt v. United States, 5 Cir. 1964, 329 F.2d 757, 758.

5. This case differs from Lloyd v. United States, 1955, 226 F.2d 9, where the bill of particulars advised: " 'that the method employed in computing the corrected net income was the specific-item adjustment method' " 226 F.2d 11–12. In that case the net worth evidence was introduced for the purpose of corroborating the proof under the specific items test.

theory. The evidence, if believed by you on the direct method was the evidence of the first two witnesses, if you will remember, as to the payment that they claim they made to Mr. Meriwether; and you may consider either the direct method or the net worth theory. Now, have I explained that to you all right? All right." [Tr. 725]

■ There is no way to be certain upon which method of proof the jury based its verdict of guilty. On the net worth method the proof was insufficient as to the net worth of Mrs. Meriwether. The jury, if properly instructed, might well have failed to find any sufficient corroboration of Meriwether's cash on hand. In the light of the emphasis placed on net worth in the district attorney's argument and in the Court's charge, the jury may well have returned the verdict convicting Meriwether upon inadequate net worth proof and inadequate instructions. The judgment must therefore be reversed and the case remanded.

Reversed and remanded.