Marcus Lemont **BARNES**, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 01–91–01454–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 10, 1992.

Bill May, Corpus Christi, for appellant.

John B. Holmes, Jr., Dist. Atty., Carol M. Cameron, Andy Tobias, Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, DUNN and MIRABAL, JJ.

## OPINION

MIRABAL, Justice.

A jury found appellant, Marcus Lemont Barnes, guilty of aggravated robbery. The jury assessed punishment at 35–years confinement and a fine of $8,000. We affirm.

In his first point of error, appellant asserts that there is insufficient evidence to sustain his conviction.

■ In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the entire body of evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The standard of review is the same for both direct and circumstantial evidence. *Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim.App.1991); *Sutherlin v. State,* 682 S.W.2d 546, 548–49 (Tex.Crim.App.1984).

The evidence, presented in the light most favorable to the judgment, follows.

Officers of the Houston Police Department, Narcotics Division, planned a "buy-bust." A "buy-bust" occurs when an officer poses as a drug dealer and buys drugs from a seller. Other undercover officers observe the purchase and arrest the seller after he delivers the drugs.

Officer Paul Powell arranged to purchase 1000 "hits" of lysergic acid diethylamide (LSD) for $900. Powell negotiated the purchase over the phone with Patrick Weaver. Weaver and Powell agreed to meet at a Dairy Queen, then proceed to a car wash around the corner where the person with the LSD would be waiting.

Powell and his partner, Officer Marino, met Weaver at the Dairy Queen. Undercover officers were in a van parked nearby in order to observe the transaction and arrest appellant when he sold Powell the drugs. Weaver told Powell to drive to the car wash around the corner. At the car wash, Weaver exited his vehicle, walked over to appellant's car, and spoke with appellant. Weaver then walked over to Powell and Marino, and told Powell that appellant was ready. Powell and Marino proceeded towards appellant's car, but appellant yelled that only one of the men could meet with him. Marino returned to Powell's car, and Powell continued to walk towards appellant's car.

Appellant remained seated in his car as Powell approached the car. Appellant asked Powell if he and Marino were police

officers, and Powell assured him that they were not. Powell then asked appellant if he had the "stuff," and appellant stated that he had it with him. Powell asked to see the LSD, but appellant refused to show it to Powell. Appellant asked to see Powell's money, and Powell replied that it was back in his car. Powell walked back to his car, retrieved a bag containing the money, and returned to appellant's car. Powell counted out $900, showed it to appellant, placed the money back inside the bag, and kept possession of the money.

There was silence—neither Powell nor appellant spoke. Appellant then reached behind his seat, and Powell moved towards the front of the car to see what appellant was doing. Appellant pulled out a revolver and pointed it at Powell. Powell ducked and started to run away. Appellant exited the car and started shooting at Powell. Powell testified that when he was only a couple of steps away from appellant, he felt a sting. Officer Estes, who observed the shooting from inside the van, testified that Powell was approximately 12 feet from appellant when he was shot. Appellant fired two more shots as Powell continued to run. Eventually, Powell fell in the middle of the street.

After Powell fell, the surveillance team moved in and arrested appellant, who was standing next to his car. The officers also arrested Weaver while he was attempting to drive away. Powell was taken to the hospital, where pellets were removed from his arms, back, and legs. At trial, Powell still had pellets in his head, back, arms, legs, and buttocks.

The officers searched appellant's car, but did not find the LSD or any other drugs. The officers recovered appellant's revolver and found that three .38 caliber "rat shots" were fired and three were not. The "rat shot" was approximately number 9 and number 10 lead shot in a .38 caliber cartridge. An expert for the State testified that the cartridges could cause death or serious bodily injury, depending upon the distance between the shooter and the target. Appellant's expert testified that these particular cartridges were manufactured for nonlethal purposes and ceased to be deadly at distances greater than 30 feet. The expert conducted test firings of rat shot from a gun similar to appellant's, and by analyzing the density of the pellets that hit Powell, concluded that Powell was 30 or more feet away from appellant when he was shot.

Appellant was indicted for aggravated robbery. The elements of aggravated robbery are (1) a person; (2) in the course of committing theft; (3) with intent to obtain or maintain control of property; (4) intentionally or knowingly; (5) threatens another with, or places another in fear of; (6) imminent bodily injury or death; and (7) uses or exhibits (8) a deadly weapon. *Bilbrey v. State*, 594 S.W.2d 754, 759 (Tex. Crim.App.1980); *Sanchez v. State*, 722 S.W.2d 781, 785 (Tex.App.—Dallas 1986, pet. ref'd); TEX.PENAL CODE ANN. § 29.02 (Vernon 1989) & § 29.03 (Vernon Supp. 1992).

■ Appellant contends that the State failed to prove the second element, "in the course of committing theft." "In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft. *Thomas v. State*, 807 S.W.2d 803, 806 (Tex. App.—Houston [1st Dist.] 1991, pet. ref'd); TEX.PENAL CODE ANN. § 29.01 (Vernon 1989). The jury charge included this definition.

Because there was no completed theft, the State had to prove that appellant *attempted* to commit theft. "Attempt" is defined by section 15.01(a) of the Texas Penal Code. The section provides:

[a] person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

TEX.PENAL CODE ANN. § 15.01(a) (Vernon Supp.1992).

It is the State's theory that because appellant never showed Powell the LSD, and no LSD was found in appellant's car, appel-

lant never intended to sell Powell the LSD; he planned to steal Powell's money.

The evidence shows that in transactions like this, the buyer and seller are often suspicious of each other, and each one may be looking for an opportunity to steal from the other. Appellant therefore concedes the evidence is sufficient to show appellant may have intended to steal Powell's money. Appellant contends that he never performed an act amounting to more than mere preparation to commit the offense, as required by section 15.01(a) of the Penal Code. Appellant argues that he never stated "give me your money," he did not attempt to grab the money from Powell, and he did not run up to Powell after he shot him. Appellant contends the evidence supports, as reasonable hypotheses, that appellant got nervous that Powell might be a policeman, or that Powell might rob appellant, and that appellant therefore was trying to scare Powell away by shooting him. Also, appellant asserts the absence of the drugs in the car proves nothing. He argues that it is feasible the drugs were kept in another location nearby, just as Powell kept his money back at the car, not on his body.

Appellant argues that, viewing the evidence from the standpoint most favorable to the State, it does no more than establish the *opportunity* to commit attempted theft, as in *Thomas*, 807 S.W.2d at 807. *Thomas*, however, is distinguishable from the facts at hand. In *Thomas*, officers found the complainant murdered, but still in possession of a large amount of gold jewelry, the contents of her purse, and cocaine. *Id.* at 806. The court held that there was not sufficient evidence to convict the defendant of aggravated robbery. *Id.* at 807.

In the present case, Powell counted out $900 in front of appellant, and then put the money back in a bag and in his pocket. Appellant paused for a moment, then reached for his gun. When Powell started running away, appellant did not let him just leave. Rather, appellant got out of his car and shot Powell three times as Powell ran. Powell was hit approximately 12 feet away from appellant, where rat shot can be deadly according to appellant's own expert witness. Appellant did not have an opportunity to get the money out of Powell's pocket because the arresting officers moved in quickly after Powell was shot, and appellant was apprehended while standing outside his car.

■ We conclude there was sufficient evidence for a jury to find that appellant intended to steal Powell's money, and that by shooting Powell, appellant performed an act amounting to more than mere preparation. We overrule appellant's first point of error.

In his second point of error, appellant claims that the trial court erred in charging the jury that a deadly weapon means a firearm. At trial, appellant objected to the charge, claiming the charge created an improper irrebuttable presumption. The trial judge overruled the objection.

The jury charge reads as follows:

"Deadly weapon" means a firearm.

"Firearm" means "any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use."

These definitions track the statutory definitions. TEX.PENAL CODE ANN. § 1.07(a)(11)(A) (Vernon 1974) and § 46.-01(3) (Vernon 1989). Appellant argues that evidence presented to the jury rebutted the presumption that a firearm is always a deadly weapon. Appellant contends that because his expert testified that the cartridges in the gun were nonlethal at distances of 30 feet or more, there was an issue for the jury to decide in determining whether the firearm was a deadly weapon, and it was error to instruct the jury that a firearm is always a deadly weapon.

■ A firearm is a deadly weapon per se under section 1.07(a)(11)(A) of the Texas Penal Code. *Gomez v. State*, 685 S.W.2d 333, 336 (Tex.Crim.App.1985). Appellant's argument that a firearm is not a deadly

weapon per se conflicts with the current law. We overrule point of error two.

We affirm the judgment.