Brenda Cantrell **VAUGHN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–93–00385–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1994.

Rehearing Overruled Dec. 15, 1994.

Lewis Dickson, Houston, for appellant.

John B. Holmes, Jr., Timothy G. Taft, Larry McDougal, Harris County, for appellee.

Before OLIVER–PARROTT, C.J., and HEDGES and ANDELL, JJ.

## OPINION

HEDGES, Justice.

A jury found appellant, Brenda Cantrell Vaughn, guilty of aggravated assault with a deadly weapon and assessed punishment at six-years confinement, probated, and a $5,000 fine. In eleven points of error, appellant complains that the evidence was insufficient as a matter of law, that the general verdict violated her right to due process, that trial counsel rendered ineffective assistance of counsel at the guilt-innocence and punishment stages, and that the trial court erred in allowing evidence that was inherently prejudicial and inflammatory. We affirm.

## SUFFICIENCY OF THE EVIDENCE

As part of point of error one, appellant contends that the evidence was insufficient as a matter of law to sustain her conviction as a primary actor.

### Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, this Court views the evidence in the light most favorable to the verdict to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Villalon v. State*, 791 S.W.2d 130, 132 (Tex. Crim.App.1990). The standard of review is the same for both direct and circumstantial evidence. *Geesa v. State*, 820 S.W.2d 154, 162 (Tex.Crim.App.1991).

This Court is prohibited from sitting as a thirteenth juror and disregarding or reweighing the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The trier of fact is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. [Panel Op.] 1981). The trier of fact is entitled to accept one version of the events and reject another, and to accept or reject any of the witnesses' testimony. *Sharp*, 707 S.W.2d at 614; *Penagraph*, 623 S.W.2d at 343.

### Facts

Viewed in the light most favorable to the verdict, the evidence established the following facts. On July 15, 1991, the complainant,

Mr. Joseph Amos, was working in his yard, shoveling mulch from his truck into a wheelbarrow. He observed two unrestrained dogs approach and relieve themselves in his yard. Appellant was accompanying the dogs. Mr. Amos climbed out of his truck to run the dogs off his property.

Mr. Amos testified that although he did not say anything to appellant, she "looked at me as though I had no business saying anything to the dogs." He climbed back into his truck and resumed shoveling the mulch. Shortly thereafter, appellant reappeared with the codefendant, Donna Puliafico, on the sidewalk between Mr. Amos' truck and his yard.

When the women stopped and allowed a third dog to relieve itself in Mr. Amos' yard, he requested that they not allow the dog to "crap" in his yard. A brief altercation ensued between appellant, Ms. Puliafico, and Mr. Amos. The incident escalated when Mr. Amos used the shovel to scoop the dog's feces and threw it at the barking dog.

Ms. Puliafico screamed racial slurs at Mr. Amos and began shoving and pushing him as Mr. Amos was standing with the shovel pointed spade down into the ground. Ms. Puliafico instructed appellant to take the dogs back and bring back their guns. Appellant departed and soon returned with two guns. She kept one and gave one to Ms. Puliafico.

Initially, appellant held her gun down by her side. Mr. Amos testified that he thought the two women were actually going to shoot him:

> [Mr. Amos]: Well, I am thinking now that they is going to shoot me, actually shoot me, because I remember them putting a gun—one of them putting a gun to my head and I am thinking, "How can I get now from where I was to my door?" And I am thinking, "Why did I stay out there and allow them to come back with a gun?" And I am thinking, "My family going to come out here and see me lying down on the ground dead."

Mr. Amos was able to get to his front door and ring the doorbell. The women followed him with the guns pointed at him; Ms. Puliafico continued her threats to kill him.

When Mrs. Amos and two of the Amos children came to the door, Mr. Amos told his wife to call the police because "we have two women that have the guns on me." Appellant pointed her gun at the Amos family and said, "I am going to kill all of you goddamn niggers." Mr. Amos managed to get inside his house. Mrs. Amos testified that she thought the women would kill her husband.

Meanwhile, Mr. Amos' two rottweiler dogs had gotten out of their fenced enclosure. Appellant and Ms. Puliafico were swinging guns at Mr. Amos' dogs as they were sniffing appellant's small dog. Mr. Amos stated that his dogs were not going towards the appellant and Ms. Puliafico. Mr. Amos left his house to round up his dogs and put them inside the fence. At that moment, appellant and Ms. Puliafico marched Mr. Amos around his house at gunpoint and stated that he and his dogs were going to die. Mr. Amos managed to get himself and his dogs inside the fenced area of his yard. He testified: "[Appellant] said, 'This is it. You are going to die.' And I thought that was it and I believe what she had told me. I thought that was it. I thought I wasn't going to get a chance to close the gate." Mr. Amos then closed and locked the gate as the women held guns on him. He went back into his house and called the police himself. Mrs. Amos heard appellant cursing and saw her empty Mr. Amos' wheelbarrow and ram it into the back of his truck.

Mr. David McNeese and his family, who were riding bicycles in the neighborhood, observed most of the incident. Mr. McNeese had not known Mr. Amos before this incident. Mr. McNeese's testimony corroborated the Amos' testimony from the point when appellant and Ms. Puliafico reappeared in front of the Amos' residence. Mr. McNeese also testified that he heard shells rattling in Ms. Puliafico's gun, indicating that it was loaded.

**Deadly Weapon**

■ Appellant argues that the evidence was insufficient to establish that she committed assault with a deadly weapon because her gun was not loaded; therefore, it could not

have been a deadly weapon. Her testimony was the only evidence that the gun was not loaded. She argues that a there is a long-standing presumption in this State that a pistol used in an assault is loaded *absent proof to the contrary,* citing *Ogren v. State,* 447 S.W.2d 682 (Tex.Crim.App.1969).[1] Her uncontradicted testimony, she contends, rebuts the presumption and conclusively establishes that the gun was not loaded. She further asserts that an unloaded gun cannot be a deadly weapon.

We do not find appellant's arguments persuasive. Her interpretation of *Ogren* is overdrawn. The defeat of a presumption does not mean that the fact at issue cannot be proved by other means. There is evidence in the record that appellant pointed her gun at Mr. Amos and told him, "This is it. You are going to die." A rational jury could infer from this testimony that the firearm was loaded if it believed Mr. Amos and disbelieved appellant.

A firearm is a deadly weapon per se under TEX.PENAL CODE ANN. § 1.07(a)(11)(A) (Vernon 1974). *Barnes v. State,* 845 S.W.2d 364, 367–68 (Tex.App.—Houston [1st Dist.] 1992, no pet.) The Texas Court of Criminal Appeals has held in *Walker v. State,* 543 S.W.2d 634, 637 (Tex.Crim.App.1976) that a "forty-five automatic, even though missing a firing pin and without a clip ... was manifestly designed and made for the purpose of inflicting death or serious bodily injury...."

We find that the evidence was sufficient to support a finding that appellant assaulted Mr. Amos with a deadly weapon.

### General Verdict

In the second part of point of error one, appellant asserts that because it cannot be determined from the general verdict whether her conviction was founded upon the law of parties, her rights to due process under the United States Constitution and to due course of law under the Texas constitution have been violated.

Appellant cites *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); and *United States v. Meriwether,* 440 F.2d 753 (5th Cir.1977) as support for her proposition that a general verdict deprives her of the right to due process. In each of those cases, the jury was charged on multiple theories of guilt, one of which clearly could not support a conviction. In that instance, a general verdict violated a defendant's right to due process. That is not the fact pattern confronting us. The indictment charged appellant with aggravated assault. A person commits aggravated assault when she intentionally or knowingly threatens another with imminent bodily injury and uses a deadly weapon. TEX.PENAL CODE ANN. § 22.01(a) (Vernon 1989); TEX.PENAL CODE ANN. § 22.02(a)(4) (Vernon Supp.1994). A defendant is guilty as a party to an offense if, acting with intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids, or attempts to aid another person to commit the offense. TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974); *Martin v. State,* 753 S.W.2d 384, 387 (Tex.Crim.App.1988). The evidence may be direct or circumstantial. *Martin,* 753 S.W.2d at 387; *Wygal v. State,* 555 S.W.2d 465, 469 (Tex.Crim.App.1977).

In deciding whether a defendant is guilty as a party, a jury may consider events occurring before, during, and after the offense and may rely on those events as indicative of an understanding and common design to commit the offense. *Moore v. State,* 804 S.W.2d 165, 166 (Tex.App.—Houston [14th Dist.] 1991, no pet.). While mere presence at the scene of an offense is not alone sufficient to support a conviction as a party, "it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant." *Beardsley v. State,* 738 S.W.2d 681, 685 (Tex. Crim.App.1987); *accord Swinney v. State,* 828 S.W.2d 254, 257 (Tex.App.—Houston [1st Dist.] 1992, no pet.).

---

1. We should follow this pre–1974 Penal Code precedent, she contends, because "prior decisions on the meaning of 'deadly weapon' do and should have instructional significance under the new [1974] Penal Code." *Mosley v. State,* 545 S.W.2d 144, 145–46 (Tex.Crim.App.1976).

A review of this record persuades us that the evidence is sufficient to convict appellant as either a principal or a party. The jury charge permitted a finding of guilty against appellant as a principal or party. The charge instructed the jury on criminal responsibility, the law of parties, self defense, defense of third persons, and provoking the difficulty. The evidence is uncontroverted that appellant went to her home, retrieved two guns, and brought them to the scene of the altercation. She kept one gun and gave the other to Ms. Puliafico. There was evidence that appellant and Ms. Puliafico pointed guns at Mr. Amos and threatened to kill him.

We overrule point of error one.

## INEFFECTIVE ASSISTANCE
## OF COUNSEL

In points of error two through eight, appellant complains that she was denied effective assistance of counsel at both the guilt-innocence and the punishment phases of her trial. She alleges that trial counsel failed to make proper objections and corrections to the jury charge and jury argument on punishment.

### Guilt–Innocence Standard of Review

■ The standard to determine whether assistance of counsel has been effective in the guilt-innocence stage of a noncapital trial is set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To obtain reversal on this ground, appellant must satisfy both prongs of the *Strickland* test: (1) that counsel's performance was so deficient that it was outside the range of reasonable professional judgment, and (2) that but for trial counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694, 104 S.Ct. at 2068; *Craig v. State*, 825 S.W.2d 128, 129 (Tex.Crim.App.1992); *Chapman v. State*, 859 S.W.2d 509, 515 (Tex.App.—Houston [1st Dist.] 1993, no pet.). The *Strickland* test has been adopted in Texas. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). Appellant must affirmatively show that trial counsel's errors "so undermined the proper functioning of the adversarial process

that the trial cannot be relied upon as having a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064; *see also Schaired v. State*, 786 S.W.2d 497, 499 (Tex.App.—Houston [1st Dist.] 1990, no pet.).

■ This standard has never been interpreted to mean that the accused is entitled to an errorless trial or perfect representation. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim.App.1990); *Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App.1986); *Chapman*, 859 S.W.2d at 516. Isolated errors of commission or omission do not by themselves render counsel ineffective, nor can ineffective assistance of counsel be established by isolating or separating out just one portion of the trial counsel's performance for examination. *Bridge*, 726 S.W.2d at 571; *Hicks v. State*, 837 S.W.2d 686, 690 (Tex.App.—Houston [1st Dist.] 1992, no pet.).

■ In determining whether counsel has provided effective assistance, a court looks to the totality of the representation. *State v. Recer*, 815 S.W.2d 730, 731 (Tex. Crim.App.1991); *Ex parte Walker*, 777 S.W.2d 427, 431 (Tex.Crim.App.1989). The "totality of the representation" test is to be applied as of the time of trial, not through hindsight. *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App.1991); *Chapman*, 859 S.W.2d at 516; *Bridge*, 726 S.W.2d at 571. There is a strong presumption that the representation is within the professional norm or within the realm of trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Stafford*, 813 S.W.2d at 506.

■ Appellant argues that trial counsel was ineffective because he failed to object to errors in the jury charge. Ordinarily, appellant must object to the jury charge in order to preserve his complaint for appellate review. If appellant does not properly object to the charge, he must show that the error is fundamental in order to obtain reversal. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984) (op. on reh'g); *see also Turner v. State*, 721 S.W.2d 909, 912 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). Error is fundamental if it so egregiously harms appellant that he is deprived of a fair and impartial trial. *Almanza*, 686 S.W.2d at 171;

*see also Turner,* 721 S.W.2d at 912. We determine whether harm has occurred by looking to the alleged jury charge error and measuring it in the context of the entire jury charge, the state of the evidence, argument of counsel, and any other relevant information contained in the record. *Almanza,* 686 S.W.2d at 171, 174; *see also Turner,* 721 S.W.2d at 913.

### Defense of a Third Person/Duty to Retreat

■ In point of error two, appellant complains that trial counsel rendered ineffective assistance when he failed to object to the jury instruction that one may not use deadly force in the defense of a third person unless she or the third person satisfies an erroneously placed duty to retreat. In point of error three, appellant argues that the failure of trial counsel to submit a substantially correct requested charge on the right to use deadly force in defense of a third person rendered his assistance ineffective. The gravamen of these two points of error is the same.

The charge given the jury on self-defense and the defense of third persons closely tracked the language of TEX.PENAL CODE ANN. §§ 9.31, 9.33 (Vernon 1974):

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree she reasonably believes the force is immediately necessary to protect herself against the other person's use or attempted use of unlawful force, *or to protect a third person* if, under the circumstances as she reasonably believes them to be, such person would be justified in using force or deadly force to protect herself against the unlawful force or deadly force of another which she reasonably believes to be threatening the *third person she seeks to protect,* provided she also reasonably believes that her intervention is immediately necessary *to protect the third person.* The use of force against another is not justified in response to verbal provocation alone.

(Emphasis added.) The charge continued with a recitation of TEX.PENAL CODE ANN. § 9.32 (Vernon 1974):

> A person is justified in using deadly force against another if she would be justified in using force against the other in the first place, as above set out, and when she reasonably believes that such deadly force is immediately necessary to protect herself, *or the third person,* against the other person's use or attempted use of unlawful deadly force, and if a reasonable person in the Defendant's situation would not have retreated.

(Emphasis added.)

The jury charge included the proper law of justification in accordance with TEX.PENAL CODE ANN. §§ 9.31–.33 A similar charge was approved in *Sternlight v. State,* 540 S.W.2d 704, 706 (Tex.Crim.App.1976), in which the court held that "[a]n instruction on the law of retreat drafted in the language of the statute is sufficient."

Appellant complains that the charge language erroneously instructed the jury that the duty to retreat was to be evaluated from the perspective of the reasonable person in the situation of the third person being defended. She cites *Hughes v. State,* 719 S.W.2d 560, 565 (Tex.Crim.App.1986) for the proposition that we are to apply "the law of retreat only to the third person, and then only in the sense that it requires the accused to make the reasonable assessment, from his standpoint, that a reasonable person in the third person's shoes would not have retreated before he may act with deadly force in that person's behalf."

A careful reading of what is admittedly a dense and protracted sentence in the application section of the charge demonstrates that this charge meets the *Hughes* standard:

> [If you find that *appellant* ] acting under such apprehension and ***reasonably believing*** *that the use of deadly force on her part was immediately necessary to protect herself or Donna Puliafico* against Joseph Amos' use or attempted use of unlawful deadly force, she threatened Joseph Amos with a firearm *and that a reasonable person in Defendant's situation would not have retreated to avoid using deadly force in her own defense, or that a reasonable person in the situation of the third person being defended would not have retreated*

to avoid using deadly force in her own defense....

(Emphasis added). We find that a fair reading of this language directs the jury to judge the reasonableness of the failure to retreat from appellant's standpoint both in the case of (1) *self defense* and (2) *in defense of a third person*, where her duty was to make a reasonable assessment of what a reasonable person in the third person's shoes would have done.

We overrule points of error two and three.

**Abandonment of Defense of a Third Person**

■ In point of error four, appellant argues that trial counsel's abandonment of the defense of third person claim constituted ineffective assistance of counsel. As evidence of abandonment of the claim, appellant quotes trial counsel in his closing argument during the guilt-innocence phase of the trial: "I believe the prosecutor is right. I believe that it was self-defense. The defense of others probably doesn't apply because it was self-defense...."

Trial counsel's "abandonment" was weakened, if not denied, by his statements immediately following: "A defense of others you find them not guilty and we go home. If you don't find that it was self-defense or defense of others I would strongly urge you to consider the charge of reckless conduct...."

We find that trial counsel's comments do not amount to error, because he continued to discuss defense of a third party in the context of a viable defense. Furthermore, even if the "concession" amounted to error, appellant has not shown that a different result would have occurred.

We overrule point of error four.

**Provoking the Difficulty**

■ In point of error five, appellant contends that trial counsel's failure to object to the giving of a jury charge on the law of provoking the difficulty when the evidence did not fairly raise such issue constituted ineffective assistance of counsel.

We find that the charge on provoking the difficulty, acting as a limiting instruction on self-defense, was proper. The evidence showed that at the initial encounter, Mr. Amos told appellant that he did not want her dogs defecating in his yard. Appellant returned with yet another dog that defecated in his yard. Both Mr. Amos and an eyewitness, Mr. McNeese, testified that Mr. Amos had not threatened appellant or Ms. Puliafico in any manner. When Mr. Amos asked again that appellant not allow her dogs to defecate in his yard and removed the feces with a shovel, appellant responded by going home and retrieving two guns. Because appellant's actions were clearly sufficient to raise the issue of provoking the difficulty, the trial court was correct in presenting the issue to the jury. *Young v. State*, 530 S.W.2d 120, 121 (Tex.Crim.App.1975); *Garcia v. State*, 522 S.W.2d 203, 206 (Tex.Crim.App.1975). In the absence of error, trial counsel had no duty to object.

We overrule point of error five.

**Right to Carry Arms to the Scene of a Difficulty**

■ In point of error six, appellant argues that trial counsel should have alternatively requested, in connection with the charge on provoking the difficulty, an affirmative, concomitant jury instruction on the right to carry arms to the scene of a difficulty. Failure to do so, she urges, constituted ineffective assistance of counsel.

■ Where a trial court limits a defendant's instruction on self-defense, the defendant is entitled to have a corresponding instruction on the right to bear arms to the scene to seek an explanation if the evidence supports the instruction. *Banks v. State*, 656 S.W.2d 446, 447 (Tex.Crim.App.1983); *Young*, 530 S.W.2d at 121–22; *Quintana v. State*, 777 S.W.2d 474, 477 (Tex.App.—Corpus Christi 1989, pet. ref'd).[2]

We find that the evidence does not support an instruction on appellant's right to arm herself and seek a peaceful resolution. We disagree, in the context of the entire record, with appellant's contention that there is a

---

2. Effective September 1, 1994, the Texas Legislature has abolished the common law "right to

arm yourself and seek a peaceful resolution." TEX.PENAL CODE ANN. § 9.31(b)(5) (Vernon 1994).

reasonable inference that she was convicted solely for having brought guns to the scene. Indeed, her reasoning collapses when considered in light of her self-defense argument: how could she be convicted on the sole evidence of bringing the guns to the scene if she is pleading self-defense? Her only logical contention for bringing the guns to the scene, from which she had safely exited, was in defense of another. The instruction on arming oneself to seek an explanation does not attach to that defense.

We overrule point of error six.

### Instruction on Law of Parties

■ In point of error seven, appellant contends that trial counsel's failure to object to the trial court's failure to specifically apply the facts to the law of parties, or to submit a substantially correct requested charge that would have done so, constituted ineffective assistance of counsel.

■ Appellant contends that the trial court erred in failing to apply her specific conduct of bringing the guns to the scene of the difficulty to the abstract law of parties. A trial court is required to apply the law of parties to the particular facts of a case. *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim.App.1977). In this case, the court charged the jury with the following application paragraph:

> Now if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, Brenda Cantrell Vaughn hereafter styled the Defendant, acting alone or with another person as a party to the offense, as that term is hereinbefore defined, heretofore on or about the 15th day of July, 1991, did then and there unlawfully intentionally or knowingly threaten imminent bodily injury to Joseph Amos by using a deadly weapon, namely, a firearm, then you will find the Defendant guilty of aggravated assault, as charged in the indictment.

Appellant would have included only one instance of conduct for which she could have been found guilty under the law of parties, the act of bringing a gun to the scene. The record contains other evidence of her guilt under the law of parties: pointing her gun at the Amos family and orally threatening Mr. Amos, for example. Appellant would not have been entitled to the limited application instruction she now insists was required.

■ We find that the application paragraph of the charge properly directed the jury to consider the law of parties, even though it did not specifically identify appellant's act of bringing the guns to the scene. We agree with the reasoning in *Chatman v. State*, 846 S.W.2d 329 (Tex.Crim.App.1993):

> We conclude the general application of the law of parties to the facts was sufficient to refer the jury to the abstract instructions on the law of parties so that the jury could properly apply the law to the facts. The jury was not misled or confused by such application under the facts of the case …

*Id.* at 332.

We overrule point of error seven.

### Punishment Phase

■ In point of error eight, appellant argues that trial counsel's failure to object to the State's asking appellant whether she "now admits to the jury that what it found took place" and its concluding argument that appellant should be punished more severely for exercising her constitutional rights to a trial constitutes ineffective assistance of counsel.

■ The test for evaluating a claim of ineffective assistance of counsel at the punishment phase of a noncapital offense is: (1) whether counsel was reasonably likely to render effective assistance, and (2) whether counsel reasonably rendered effective assistance. *Craig*, 825 S.W.2d at 130 (citing *Ex parte Duffy*, 607 S.W.2d 507, 516 n. 17 (Tex. Crim.App.1980)). The "reasonably effective assistance" standard does not mean errorless counsel or counsel whose competency is judged by hindsight. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex.Crim.App.1991); *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim. App.1987).

■ The sufficiency of the attorney's assistance is "gauged by the totality of the representation of the accused." *Cruz*, 739 S.W.2d at 58. In addition to a showing of some act constituting ineffective assistance,

an appellant must also show harm resulting from trial counsel's alleged ineptitude. *Stone v. State,* 751 S.W.2d 579, 582 (Tex.App.— Houston [1st Dist.] 1988, pet. ref'd).

Appellant testified at the punishment phase of the trial. On cross-examination, the State asked her if she admitted the commission of the crime:

[Prosecution]: Ms. Vaughn, do you accept the jury's verdict?

[Appellant]: Yes, I have to.

[Prosecution]: During the trial you denied what took place and what the jury found to be true. And do you now admit to the members of the jury that took place?

[Appellant]: No, what I told the jury was absolute truth, what I believe was the truth, what happened was the absolute truth.

[Prosecution]: No further questions, Your Honor.

In closing argument, the State made the following argument:

Thank you, Your Honor. You know, ladies and gentlemen, one of the first things a person has to do when they want to rehabilitate is to admit their crime. Admit what they did. Admit the injustice and the harm they caused to another. But we didn't hear that here today. They have not admitted to anything. They are not admitting to what you found them guilty of. That's the first step anybody has to take in rehabilitation. They haven't done it. Possible reason could be for them to do it, they would have to get on the stand and admit to that they lied to us. But the thing is they are not admitting it and that's the first step to rehabilitation.

Appellant argues that the question asked by the State and the prosecutor's remarks at closing represent a "watering-down" of her right to trial. She asserts that she should not have been coerced into admitting guilt on the one hand "upon the heels of a plea of not guilty" and an unsuccessful jury trial or on the other, while facing the prosecutor's argument that she should be denied probation because she refused to admit her guilt.

Appellant cites *Thomas v. United States,* 368 F.2d 941 (5th Cir.1966) as controlling precedent. In that case, the trial judge, immediately before sentencing the defendant, told him:

If you will come clean and make a clean breast of this thing for once and for all, the Court will take that into account in the length of sentence to be imposed. If you persist, however, in your denial, as you did a moment ago, that you participated in this robbery, the Court must take that into account.

*Thomas,* 368 F.2d at 944. After the defendant denied participation in the robbery, the court sentenced him to the maximum term permitted by law.

The Fifth Circuit held that the trial court committed error and reversed. That court reasoned:

The two "ifs" which the district court presented to Thomas placed him in a terrible dilemma. If he chose the first "if," he would elect to forego all of the above-noted post-conviction remedies and to confess to the crime of perjury, however remote his prosecution for perjury might seem. Moreover, he would abandon the right guaranteed by the Fifth Amendment to choose not to be a witness against himself, not only as to the crime of which he had been convicted, but also as to the crime of perjury. His choice of the second "if" was made after the warning that the sentence to be imposed would be for a longer term than would be imposed if he confessed. From the record, it is clear that an ultimatum of a type which we cannot ignore or approve confronted Thomas. Truly, the district court put Thomas "between the devil and the deep blue sea."

*Thomas,* 368 F.2d at 945.

It is important to note that in spite of its discussion of Thomas' constitutional rights, the Fifth Circuit goes out of its way to deny that its decision was based on a denial of constitutional rights. Instead, it premised its holding on the exercise of its supervisory power over federal district courts arising from the necessity to administer criminal justice in the federal courts. *Id.* at 947. Fifth Circuit precedent is not binding on Texas courts, although constitutional

pronouncements are in most cases highly persuasive. The *Thomas* holding, emanating from federal appellate supervisory control over trial courts, does not control the decisions of this Court. Appellant has cited no Texas authority, and we have found none, that supports her contention that the State's question and argument were harmful error.

■ In order for trial counsel's failure to object to the State's question and argument to have been ineffective assistance, appellant must demonstrate that if he had objected, the trial judge would have committed error in refusing to sustain his objection. Appellant cannot meet that burden. We believe that the questions themselves were proper and represent no more than the usual risk a defendant assumes when he or she takes the stand to testify. At most, any error would have been improper jury argument by the State.

We cannot say that the trial judge would have committed error had he overruled an objection to the State's remarks on closing. There is no definitive precedent that controls; indeed, the lack of state court precedent combined with *Thomas'* reliance on federal supervisory powers makes a ruling on appellant's hypothetical objection extremely uncertain.

We overrule point of error eight.

**Cumulative Error**

In points of error nine and ten, appellant argues that the cumulative and synergistic effect of trial counsel's errors and omissions denied her the right to effective assistance of counsel, due process of law, and a fundamentally fair trial. Because we have overruled all her points of error urging ineffective assistance of counsel, we find that these points have no merit.

We overrule points of error nine and ten.

## ADMISSIBILITY OF EVIDENCE

■ In point of error eleven, appellant complains that the trial court erred "by allowing the State to prove that appellant and her codefendant were lesbians." Appellant argues that the probative value, if any, of such evidence was outweighed by its inherent prejudicial and inflammatory character.

■ The determination of admissibility of evidence is within the sound discretion of the trial court, *Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App.1979), and will not be reversed on appeal unless a "clear abuse of discretion is shown." *Werner v. State,* 711 S.W.2d 639, 643 (Tex.Crim.App.1986); *Johnson v. State,* 698 S.W.2d 154, 160 (Tex.Crim. App.1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Nubine v. State,* 721 S.W.2d 430, 432 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

[T]rial courts have considerable discretion as to how and when bias may be proved and as to what evidence is material for that purpose.... The trial judge must balance the probative value of the evidence sought to be introduced against the potential risks of undue prejudice, embarrassment or harassment of either a witness or a party, the possibility of misleading a jury, and the possibility of undue delay or waste of time.

*Chvojka v. State,* 582 S.W.2d 828, 831 (Tex. Crim.App.1979).

Appellant assigns error to the following cross-examination of Ms. Puliafico:

[Prosecution]: Miss Puliafico, I believe the question was whether you enjoy a *special relationship* with Miss Vaughn. Let me asked [sic] it this way: On July 15th, 1991, *were you romantically involved with Miss Vaughn?*

[Witness]: Yes.

[Prosecution]: Wouldn't it be a fair characterization to say that when two people are in love with each other, you care deeply for someone, that you will do whatever you can to protect them and help them?

[Witness]: I would say that's a fair characterization, yes.

The State counters appellant's argument with citation to a line of cases in which evidence of socially unacceptable or illicit *relationships* were allowed to show bias. *Logan v. State,* 698 S.W.2d 680, 682 (Tex.Crim. App.1985) (jury argument that defendant and witness were two women "sleeping together" for five years); *Daywood v. State,* 157 Tex. Crim. 266, 273, 248 S.W.2d 479, 483–84 (1952) (defense witness kept company with the mar-

ried defendant); *Denmark v. State*, 95 Tex. Crim. 413, 254 S.W. 954 (1923) (defense witness and defendant lived together without being married); *Sexton v. State*, 48 Tex. Crim. 497, 88 S.W. 348, 349 (1905) (defense witness and defendant lived together in adultery for five or six years); *Thompson v. State*, 35 Tex.Crim. 511, 34 S.W. 629, 631 (1896) (defense witness was the "kept-woman" of the co-defendant); *Crist v. State*, 21 Tex.App. 361, 17 S.W. 260, 261 (1886) (defendant and witness lived together outside bonds of matrimony).

The State distinguishes *Brown v. State*, 168 Tex.Crim. 67, 323 S.W.2d 954 (1959), which reversed a criminal conviction because of prejudicial testimony. In *Brown*, the prosecutor asked the defense witness following question:

All right, now, Grady, so that we can better understand your position in this case, I will ask you if it isn't a fact, Grady, that you have been and you are in love with this Defendant to the extent that you have had *sexual relations* with him?

*Id.* at 956. The defendant in *Brown* was a priest and the witness was his male chauffeur. *Id.* at 957. The court held that evidence as to *acts of sodomy* are inadmissible to show bias on the part of a defendant at a trial on a misdemeanor charge. *Id.*

The testimony appellant finds offensive in this case involves the proof of a *relationship* and not specific conduct or acts. In *Daywood*, the court stated that "for the purpose of showing bias a witness in a criminal prosecution is properly subject to cross-examination concerning *any illicit relations* with the defendant.... It may be shown not only that the relationship existed at the time of the commission of the crime, but also that such relationship existed afterward." *Daywood*, 248 S.W.2d at 483.

More recently, the Texas Court of Criminal Appeals held that in light of the evidence and the context, "the jury could have interpreted [the prosecutor's] statement to mean that it should view with caution the alibi testimony of [the defense witness] because of the close *relationship* that she and appellant

previously had." *Logan*, 698 S.W.2d at 683; *see also Sexton*, 88 S.W. at 349. We find that the trial court did not abuse its discretion in admitting evidence of the relationship between Ms. Puliafico and appellant for the purpose of showing Ms. Puliafico's bias.

We overrule point of error eleven.

We affirm the judgment of the trial court.

OLIVER–PARROTT, C.J., concurring in part and dissenting in part.

OLIVER–PARROTT, Chief Justice, concurring and dissenting.

I concur in the result of appellant's eleventh point of error and dissent from the majority's holding on appellant's point of error eight.

In point of error 11, appellant asserts that the trial court erred by allowing the State to prove that appellant and her codefendant were lesbians. The majority finds no error. I write to stress the unique reasons why the trial court in this particular case did not abuse its discretion in allowing this evidence of an appellant's private sexual life.

In a case where the defendant's sexuality is unrelated to the offense, the judge should presume that evidence of the defendant's sexuality is irrelevant and not admissible. Evidence of a person's sexual orientation can *never* be properly used to undermine that person's credibility as a witness. However, in this case, that evidence served another purpose: it showed a relationship between the defendant and a witness for the defense. I agree with the majority that evidence of the relationship between the defendant and a defense witness or codefendants testifying on behalf of each other is relevant to show bias.

That such evidence is *relevant* is not to say that is always *admissible*. Admissibility depends on the trial judge's balancing of the probative value and the prejudice of the evidence as provided in Rule 403 of the Rules of Criminal Evidence. Tex.R.Crim.Evid. 403.[1] In this case, the judge's balancing was not an abuse of discretion for several reasons.

---

1. "Although relevant, evidence may be excluded if its probative value is substantially outweighed

by the danger of unfair prejudice...." Tex. R.Crim.Evid. 403

First, the prosecutor chose the words to describe the relationship very carefully. The prosecutor did not question appellant's codefendant concerning any specific acts or conduct, but limited his questions to their relationship only.[2] Second, the discussion as to the wording of the question was conducted outside the presence of the jury. Third, the probative value of the evidence was great relative to the other evidence of bias introduced up to that point. The only evidence the jury had concerning the relationship between the codefendants was that they were friends and shared a house. The jury could reasonably infer much more bias from someone with whom the defendant is romantically involved than the defendant's roommate. Had either counsel first questioned appellant's codefendant in more detail to show that they were very close personal friends and cared very deeply for each other, the prosecution's evidence that they were romantically involved would not have had nearly as much probative value.

Although I do not find the judge abused his discretion by admitting the particular question and answer complained about on appeal, the prosecutor's jury argument deserves comment. In his closing argument, the prosecutor referred to appellant and her codefendant as "sexual deviant[s]." This statement was not objected to or appealed. It was, however, inappropriate and unnecessary. A person's private sexual choices should not be used to question credibility or enhance punishment. Because of the fear and prejudice some people have against gays and lesbians, evidence that establishes this type of relationship should be excluded unless it is somehow connected to the specific offense or, under the circumstances, is extremely probative.

In her eighth point of error, appellant contends that it was error to allow the prosecutor to ask her during punishment to admit guilt and when she refused, use it against her to argue for a more severe punishment. I agree. Even though her trial counsel did not object to the questions and argument, I feel this is fundamental error requiring reversal.

Appellant pleaded not guilty and testified at guilt-innocence on her behalf. After the jury verdict, she again testified during the punishment phase. The prosecutor asked her if she would now admit her crime, and she refused. The prosecutor then used her lack of confession to argue for harsher punishment. I have two serious concerns with allowing this type of activity. First, it interferes with the right against self-incrimination.[3] Second, it hinders the right to appeal a conviction.

During the punishment stage, the defendant is not entitled to many of the procedural safeguards that are given at guilt-innocence. The fifth amendment, however, is still guaranteed. *Brown v. State*, 617 S.W.2d 234, 237 (Tex.Crim.App.1981). Simply, the fifth amendment applies just as much during punishment as during guilt-innocence. *Estelle v. Smith*, 451 U.S. 454, 463–64, 101 S.Ct. 1866, 1873, 68 L.Ed.2d 359 (1981) (referring specifically to the Texas bifurcated trial system); *Stewart v. State*, 666 S.W.2d 548, 549 (Tex. App.—Dallas 1984, pet. ref'd).

The fifth amendment right not to testify includes as a necessary corollary the right to testify. *Estelle*, 451 U.S. at 467–68, 101 S.Ct. at 1875; *Brown*, 617 S.W.2d at 236. Surely this right allows the defendant to plead not guilty and insist on innocence until the bitter end if necessary. Fifth amendment rights must be freely exercised, unrestrained by government coercion. *Estelle*, 451 U.S. at

**2.** The actual questions and answers admitted before the jury were as follows:

Q: (by McDougal): Miss Puliafico, I believe the question was whether you enjoy a special relationship with Miss Vaughn. Let me ask it this way: On July 15, 1991, were you romantically involved with Ms. Vaughn?
A: (Ms. Vaughn): Yes
Q: Wouldn't it be a fair characterization to say that when two people are in love with each other, you care deeply for someone, that you will do whatever you can to protect them and help them?
A: I would say that's a fair characterization.

**3.** This right is found both in the Texas Constitution and the United States Constitution. U.S. Const. amend. V; Tex. Const. art. I, § 10 (as applied to the states through the fourteenth amendment). Unless otherwise indicated, both will be referred to collectively as the "fifth amendment."

467–68, 101 S.Ct. at 1875. Although the defendant may waive fifth amendment rights, "governmental action that inhibits *unfettered* exercise of the privilege is prohibited." *Stewart,* 666 S.W.2d at 549 (emphasis added).

Conduct like the prosecutor's in this case undermines the "unfettered exercise" of fifth amendment rights. The prosecutor is essentially forcing the defendant to either admit guilt and commit perjury or be faced with a stiffer punishment. This violates the fifth amendment. *United States v. Rodriguez,* 498 F.2d 302, 312 (5th Cir.1974); *Thomas v. United States,* 368 F.2d 941, 945 (5th Cir. 1966).[4] The defendant's fifth amendment rights cannot be bargained away for the price of lesser punishment. *Rodriguez,* 498 F.2d at 312. That amounts to an ultimatum that cannot be condoned because it constitutes "coercion as a matter of law." *Thomas,* 368 F.2d at 945 (quoting *United States v. Tateo,* 214 F.Supp. 560, 567 (S.D.N.Y.1963)). Under the fifth amendment, a defendant's refusal to confess guilt is not a legitimate factor to consider for purposes of punishment. *Laca,* 499 F.2d at 927. To put it another way, a defendant cannot be punished for exercising the "constitutional right to stand trial rather than plead guilty." *Baker v. United States,* 412 F.2d 1069, 1073 (5th Cir.1969), *cert. denied,* 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970).

Allowing the prosecutor to place the defendant in this dilemma guarantees the risk of harsher punishment. If the defendant refuses to admit guilt, the prosecutor can use that to argue that the defendant deserves stiffer punishment—exactly what happened in the present case. If the defendant confesses on the stand at punishment, the defendant has committed perjury and is subject to prosecution for that. Furthermore, the

United States Supreme Court has ruled that the defendant's willingness to commit perjury is a legitimate factor to consider in assessing punishment. *United States v. Grayson,* 438 U.S. 41, 50–52, 98 S.Ct. 2610, 2616, 57 L.Ed.2d 582 (1978). The defendant is in a catch-22 [5] with no way out, other than not testifying. The defendant's choice not to testify must be made voluntarily, not induced by such pressure. *Estelle,* 451 U.S. at 467–68, 101 S.Ct. at 1875; *Stewart,* 666 S.W.2d at 549.

The second major concern I have with the prosecutor's conduct is the impact on the defendant's right to appeal. Once a defendant is found guilty, the defendant has not been "finally and irrevocably adjudged guilty." *Thomas,* 368 F.2d at 945. The defendant still has many options, including "motion for new trial (including the opportunity to discover new evidence), appeal, ... and collateral attack." *Id.* When a defendant admits guilt in the punishment phase, the defendant waives any challenge to the sufficiency of the evidence. *Mata v. State,* 867 S.W.2d 798, 807 (Tex.App.—El Paso 1993, no pet. history); *Rodriguez v. State,* 691 S.W.2d 77, 80 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd). Justice Teague stated in a concurring opinion that admitting guilt in punishment has a negative impact on "*any* error that may have occurred during the guilt stage of the trial." *Gordon v. State,* 651 S.W.2d 793, 793 (Tex.Crim.App.1983) (Teague, J., concurring) (emphasis added).

The right to appeal is "now an integral part of the trial system for finally adjudicating the guilt or innocence of a defendant." *Thomas,* 368 F.2d at 945. The defendant does not lose the right to appeal or continue to assert innocence just because the jury

---

4. The majority refuses to consider the *Thomas* line of cases, arguing that *Thomas* was based on the Fifth Circuit's exercise of its supervisory power over federal district courts instead of the fifth amendment. However, the court did not premise its holding solely on supervisory control, stating that supervisory power was "an independent basis of decision." *Thomas,* 368 F.2d at 946. Also, the court later stated that they used their supervisory powers *because* the conduct at issue violated the constitutional rights of the defendants. *United States v. Wright,* 533 F.2d 214, 216 (5th Cir.1976). Other cases refer only to the

fifth amendment concerns without ever mentioning supervisory power. *See United States v. Laca,* 499 F.2d 922, 927–28 (5th Cir.1974); *Rodriguez,* 498 F.2d at 312–13 (5th Cir.1974.) It only makes sense that the fifth amendment is an independent basis of decision; a federal appeals court can use its supervisory power only if the lower court has done something objectionable.

5. Catch–22 is a situation where alternatives can cancel each other out, leaving no means of settling a dilemma.

finds the defendant guilty. *Wright*, 533 F.2d at 216. The trial court should not use its punishment power to persuade the defendant to either give up the right to appeal by admitting guilt during the punishment phase or punishing the defendant for choosing to exercise constitutional rights:

> "[P]enalizing those who choose to exercise" constitutional rights ... [is] "patently unconstitutional." ... A court is "without right to ... put a price on appeal. A defendant's exercise of a right of appeal must be free and unfettered.... [I]t is unfair to use the great power given to the court to determine sentence to place the defendant in the dilemma of making an unfree choice."

*North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969) (citations omitted).

Contrary to the State's position, the fact that appellant made a motion for probation is irrelevant in this case. In *Overstreet v. State*, 470 S.W.2d 653, 654–55 (Tex.Crim.App. 1971), the court found that the prosecutor's comment as to the defendant's lack of remorse was not necessarily reversible error when probation had been requested. However, *Overstreet* specifically found that the statement complained about would not have been construed by the jury as a comment on the defendant's failure to testify. In the present case, the prosecutor's comment was quite direct.

As the Court of Criminal Appeals stated in *Overstreet*:

> [A] defendant in a criminal case under our laws has the right to enter a plea of not guilty and to file a motion for probation, and [exercising] ... those rights should not be used against [the defendant].... [The defendant] need not plead guilty in order to be entitled to probation.

470 S.W.2d at 655. While the State may have more leeway in language when the defendant has requested probation, the State may not force a defendant who has pleaded not guilty and testified in the both phases of trial to face the choice of either committing perjury and losing the right to appeal or facing harsher punishment.

The majority finds that being asked to admit guilt when testifying at the punishment phase is "no more than the usual risk a defendant assumes" when taking the stand. The State also makes this same argument, citing *McGautha v. California*, 402 U.S. 183, 214–17, 91 S.Ct. 1454, 1471–72, 28 L.Ed.2d 711 (1971). However, that case does not apply to the case at hand. Because Texas jurisprudence is unique with its bifurcated trial system, the Court of Criminal Appeals has found that cases from other jurisdictions are instructive and informative on fifth amendment issues, but sometimes inadequate to resolve questions unique to Texas. *Brown*, 617 S.W.2d at 235–36. *McGautha* is one of those cases. The *McGautha* Court was reviewing a case from a state that did not have a bifurcated trial system. *McGautha*, 402 U.S. at 216, 91 S.Ct. at 1472. In a unitary system, the defendant does not have the option of testifying at punishment or during guilt-innocence or both. The State, therefore, has no mechanism to coerce the defendant to admit guilt and commit perjury after the jury has found the defendant guilty.

In conclusion, the majority's holding allows prosecutors to use the Texas system to inhibit the defendant's exercise of constitutional rights. It is contrary to the law and to the spirit of the law. I would sustain appellant's eighth point of error and reverse this case for a new trial on punishment only.

