Opinion delivered, May 25, 1886.

---

[No. 3899.]

JAKE CRIST *v.* THE STATE.

1. PRACTICE—CHARGE OF THE COURT.—Errors of omission in the charge of the court, when complained of for the first time in the motion for a new trial, will be considered by this court in connection with the whole record, and will not be revised unless they be of such character as were calculated to operate injuriously to the rights of the accused.

2. Assault with Intent to Murder—Evidence.—A witness for the defense having testified to facts which, if true, would clearly exonorate the accused, was asked by the State's counsel, on cross-examination, if she and her husband were not separated, and if the accused was not living in the same house with her. Objection to the question being overruled, the witness answered in the affirmative. *Held*, that the evidence was competent, the State having the right to show the relations existing between the witness and the accused, in order to show the bias and motives of the former.

3. Practice—Statement of Facts.—Affidavits *dehors* the record have no standing in this court. The certificate of the trial judge to the statement of facts is conclusive.

4. Same—Mutual Combat—Evidence.—When parties mutually engage in a combat with deadly weapons, under circumstances which would not reduce a homicide from murder to manslaughter, the party killing would be guilty of murder, and the fact that the combat is mutual will not, *ipso facto*, reduce the homicide from murder to manslaughter. See the opinion and the statement of the case for evidence *held* sufficient to establish the fact that the defendant provoked the difficulty under such circumstances that, had death resulted to the injured party, the accused would have been guilty of murder, and sufficient, therefore, death not resulting, to support a conviction for assault with intent to murder.

Appeal from the District Court of Parker. Tried below before the Hon. R. E. Beckham.

The conviction in this case was for an assault with intent to murder one S. L. Smith, in Parker county, Texas, on the twenty-second day of July, 1885. The penalty assessed against the appellant was a term of two years in the penitentiary.

S. L. Smith was the first witness for the State. He testified that in July, 1885, he lived in Parker county, Texas, about eight miles distant from Weatherford. The defendant and a Mrs. Anderson occupied a house a short distance from witness's house. On the twenty-first day of the said month the witness passed by Mrs. Anderson's house en route to his work on J. R. Martin's place. On his return home that evening the witness found Mrs. Anderson and her daughter at his house engaged in a quarrel and interchange of angry words with his wife. Witness's wife told Mrs. Anderson that she wanted to have nothing to do with her, and did not want her to come about the witness's place. Witness made some remark apropos of the quarrel, when Mrs. Anderson turned on him, and favored him with a tongue lashing, and a torrent of verbal abuse, the like of which the witness had never, in his varied experience, received from man or woman. In re-

ply, the witness told Mrs. Anderson that if she would send her man over, he would settle the matter with him, and she left. The witness started back to Martin's on the next morning to resume his work, cutting poles, having his axe on his shoulder. When he reached a point opposite Mrs. Anderson's house, he observed the defendant sitting on the front porch engaged, apparently, in reading a newspaper. Defendant looked toward witness, got up quickly, went into and through the house and passed out at another door, by which time witness had passed some ten or fifteen steps beyond the house. As defendant stepped out of the door he called to the witness: "Stop! I understand you want to see me." Witness looked back but kept moving along the road away from defendant, who had his hand in his pocket. Witness not halting, the defendant, advancing, called to him: "Stop, you d–d son–of–a–b–h!" Witness stopped, turned and saw the defendant coming towards him with his pistol in his hand. Witness, thinking best to attempt to bluff him, started towards him with his axe still on his shoulder, and told defendant to "put up that pistol." At this juncture the defendant fired, the ball striking the witness in the neck, and bringing him to his knees. The two were then about six steps apart. Mrs. Anderson then called to the defendant not to shoot again. Defendant returned to the house, and witness, with great difficulty, made his way home. The ball exhibited was the one with which the witness was shot, and which Doctor Simmons extracted from his neck. It was fired, the witness thought, from a British bull-dog pistol.

J. R. Martin testified, for the State, that he was at the house of S. L. Smith on the day that he was shot. Smith had worked for the witness on the day before, clearing land, and was to have returned to work on that day, but failing to put in an appearance, witness went to his house and found him suffering from a wound in the neck. The defendant, during the Christmas holidays of 1884, told the witness, in the course of a conversation, that Smith had drawn a knife on him, and that, if Smith ever bothered him again, he intended to "fix him."

The defendant's counsel, on cross-examination, asked the witness what Smith said to him, at his house, about the difficulty with defendant. In reply, the witness testified that Smith told him that when he, Smith, en route to witness's house on that morning, got opposite to Mrs. Anderson's house, the defendant called to him to stop, remarking at the same time: "You sent

for me; we can settle the matter right here;" that the defendant had a pistol in his hand; that, thinking to bluff defendant, he started towards defendant and told him to put up his pistol; that the defendant, instead of putting up his pistol, fired it, lodging the ball in his neck and bringing him to the ground.

Doctor Simmons testified, for the State, that he was called to attend S. L. Smith when he was shot, and cut such a ball as that exhibited from his neck. The wound was such as would or would not cause death, according to the treatment and nursing. The State closed.

Mrs. Anderson was the first witness for the defense. She testified that on the day before the defendant shot Smith, she and her daughter were returning home with a bucket of water through Smith's yard. Mrs. Smith came out of her house and told witness and her daughter not to come into Smith's yard again. Mr. Smith then came out of his house, and a war of words ensued between him and the witness. Smith finally told witness to send her man around and he would settle the matter with him. Witness replied to him that she had no man. Smith said: "I mean the man living with you at your house." Witness replied to Smith: "No man is living with me." Witness then went home and told defendant what Smith had said. On the next morning, while defendant was sitting on the witness's gallery, Smith passed with an ax on his shoulder. Defendant got up, passed through the house, and called to Smith and said: "Stop a minute; we will talk that matter over." Smith did not stop when first hailed. Defendant called again to Smith, and said: "Stop a minute; you sent for me; what do you want?" Smith then started to defendant, with his ax drawn in a threatening manner, and told him not to draw his pistol. He continued to advance upon defendant until but two or three steps separated them, when defendant drew his pistol and fired. Smith fell, and witness told defendant not to shoot again. Defendant then went back to the house.

Cross-examined, the witness testified that she was unable to say whether or not defendant got his pistol as he passed hurriedly through the house, on observing the approach of Smith. She saw no pistol in defendant's hand as he passed out of the house. Smith had passed the house when defendant hailed him. Witness had a living husband from whom she had been separated for two years. The defendant had been living at the witness's house three or four months when the shooting occurred.

Defendant left immediately after the shooting, and did not return to Parker county until arrested. Witness moved from Parker county in October, 1885, and has since lived in Montague county. Defendant came to witness's house, in Montague county, shortly after her location in that county, and remained there until arrested. Witness knew that the defendant was in Montague county when she moved there from Parker county. Witness was present as an attached witness.

John Murphy testified, for the defense, that he was at Smith's house on the day of the shooting. Smith's account of the difficulty, as then given to witness, corresponded with the account he gave the witness Martin. The defense closed.

William Wolford, Smith's brother-in-law, testified, for the State, that he was with Smith at Mrs. Anderson's house during the Christmas holidays of 1884. Smith was somewhat under the influence of liquor, and became involved in an angry discussion with defendant. Soon afterwards witness met defendant in the road, near Mrs. Anderson's house, when defendant told witness that Smith drew a knife on him at Mrs. Anderson's, and that he would kill Smith if Smith ever crossed him. Witness told defendant that he was present on the occasion he referred to, and that Smith neither drew nor attempted to draw a knife on him.

J. E. Peacock testified, for the State, that, some time before the shooting, he heard defendant say that he would kill Smith if he, Smith, ever bothered him.

Deputy sheriff Steel testified, for the State, that he went to Mrs. Anderson's house, on the day of the shooting, to arrest defendant. He failed, after diligent search, to find the defendant. Defendant was subsequently arrested in Montague county.

The motion for new trial raised the questions discussed in the opinion.

*Harcourt & Ball*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. The conviction in this case was for an assault with intent to murder. It is insisted that, as there was evidence tending to prove that appellant acted in self defense, the court erred in not properly defining an assault, so that the jury could properly understand that portion of the charge in which the jury were instructed: "If you believe from the evidence that

defendant did commit an assault upon said Smith, yet, if you further believe from the evidence that at the time said Smith was making an assault upon the defendant, or if it reasonably appeared, etc., then you should acquit." The objection to the definition is that it omits "any threatening gesture." There was no objection to this omission. There was no charge on manslaughter, nor on mutual combat; nor was such charge requested, nor objections taken to the charge because of these omissions.

Now, with reference to these omissions in the charge, being for the first time called to the attention of the court in a motion for new trial, the rule is that this court will look to the whole record, and, unless the errors were probably calculated to injure the rights of appellant, will not reverse. Looking, therefore, to the statement of facts and to the charge of the court as a whole, if errors, they were not such as would probably injure appellant's rights.

It appears that, on the day before this, Smith, the prosecutor, and one Mrs. Anderson had a very bitter quarrel, and that Smith told her that if she would send her man over he would settle the matter with him. The difficulty between Smith and appellant occurred next morning near Mrs. Anderson's house. Appellant lived with Mrs. Anderson, and had, no doubt, been informed of what Smith had said to Mrs. Anderson about sending her man over.

Now, when Mrs. Anderson was on the stand for defendant, having testified to the facts and circumstances attending the rencountre, and very favorably to defendant, the district attorney, upon cross-examination, asked her if she was not separated from her husband, and if defendant was not living in the same house with her; to which defendant objected because irrelevant and incompetent. The objection was overruled, and the witness answered said questions in the affirmative. Under the circumstances of this case, these questions and the answers thereto were competent. Mrs. Anderson was a very important witness. She swore to facts clearly exonerating appellant, and the State had the right to show the relations existing between her and defendant, in order to show her bias and motives, which may have explained her testimony.

In the statement of facts J. E. Peacock's name appears as a witness for the State, but it appears from his affidavit that he was not a witness in the case at all. We cannot inquire into

this matter; the certificate of the trial judge is conclusive. (Rainey v. The State, 20 Texas Ct. App., 473.)

We do not take the same view of this case as is entertained by counsel for appellant. To our minds this is clearly a case in which the defendant provoked the combat,—produced the occasion which brought about the difficulty—such a difficulty as would end in the death of one or the other of the parties. Appellant, with a pistol, hailed Smith, who was armed with an ax, and passing on his way to his work. Both parties were armed with deadly weapons. Appellant saw that Smith was thus armed and still pressed the difficulty.

This was not a case in which defendant provoked the combat, —produced the occasion,—intending only an ordinary battery; but appellant must have known that the combat would be of a deadly character; and under such a state of case, no matter to what extremity he may have been reduced in the combat,—no matter in what peril he may have been placed by his adversary, —had he shot and killed Smith, the killing would have been murder; and, so, death not resulting, the assault is an assault to murder.

But counsel for appellant insist that the evidence shows a mutual combat. Conceding it for the argument, it by no means follows that either party engaged in the combat would not have been guilty of murder had death resulted from the combat. When parties mutually engage in a combat with deadly weapons, under circumstances which would not reduce to manslaughter, if either is killed, the party killing would be guilty of murder, and the fact that the combat is mutual would not *ipso facto* reduce to manslaughter.

We have examined all the points raised in the brief of counsel, and have also given this record a most thorough investigation, but fail to find such error as requires a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*