358 S.W.3d 352 (2011)
In the Matter of O.O.A., Appellant.
No. 14-10-00512-CV.
Court of Appeals of Texas, Houston (14th Dist.).
September 13, 2011.
*353 Don A. Hecker, Stafford, for appellant.
Gail Kikawa McConnell, Richmond, appellee.
Panel consists of Justices FROST, JAMISON, and McCALLY.

OPINION
MARTHA HILL JAMISON, Justice.
Appellant O.O.A., a juvenile, appeals the trial court's order of adjudication against him for engaging in delinquent conduct by engaging in sexual contact with a child younger than 17-years-old. After the jury found that appellant engaged in delinquent conduct, the trial court assessed punishment at 24 months' probation. In one issue, appellant contends that the trial court erred by denying appellant's request to cross-examine the complainant regarding her sexual orientation. Because we find such evidence was properly excluded on this record as irrelevant, we affirm.

Background
As 16-year-old L.J. was walking to the school nurse's office between classes on October 9, 2009 to buy crackers,[1] she saw appellant walking behind her within arm's reach. L.J. testified that appellant told her that she "was looking pretty" to which she replied, "Thank you." She said that he then grabbed the back of her shirt and asked if he could give her a kiss. When she said "no," he walked ahead and turned around as if to hug her. She tried to push him away, but she testified that he pushed her into the corner, between the wall and a vending machine across from the nurse's office. The vending machine blocked the view from the nurse's office of appellant and L.J. When appellant had L.J. against the wall, he pulled down the top of her shirt and one side of her bra. One breast was exposed, and L.J. testified that he grabbed and squeezed the exposed breast. Appellant again asked L.J. to kiss him. She was "choking him to get him off her and "had one of [her] hands ... between his neck and chest; and with [her] other hand, [she] was trying to pull up her shirt at the same time." She told appellant "to get his hands off" her but testified that appellant did not listen. L.J. then grabbed appellant's wrist and removed his hand from her breast. At some point after that, the door to the nurse's office opened, and appellant walked away.[2] This incident was recorded in part by a surveillance camera in the hallway. The video, which was shown to the jury, shows appellant grabbing L.J.'s arm and the two of them moving out of view of the camera: it does not show what happened after that, as the area between the vending machine and the wall was outside the range of the camera.
L.J. then walked into the nurse's office, but did not tell the nurse what happened because there were other students in the *354 office and she was embarrassed for them to hear. She went upstairs to see Robert Banks, an assistant principal, and told him what had happened. But she told Banks that she did not want to pursue the matter. She testified that she did not know Banks well and was uncomfortable talking to him because "he's a man." Banks testified that she was visibly shaken, which was "[d]efinitely out of character" because she was acting "vulnerable," rather than "handling things herself." After that, L.J. reported the incident to one of the police officers at the school. She felt more comfortable talking to him than Banks because she knew the officer well and he was a police officer. She prepared a written statement and then went to see another associate principal, Karin Grisdale. Grisdale testified that L.J. "had been crying" and "was very upset." L.J.'s account of what had happened was consistent each time she relayed it. After obtaining permission from L.J.'s mother, Grisdale also took L.J. to the Children's Advocacy Center (the Center), where she was interviewed again.
At trial, defense counsel asked L.J. about her interview at the Center, which was videotaped.[3] She agreed with defense counsel that during her interview, she had stated that she spent all of her time with a female friend. When the State objected to the relevancy of that line of questioning, counsel told the trial court that he wanted to show that L.J.'s credibility was at issue because she could not have spent all her time with this friend, who lived in San Antonio. The trial court allowed appellant's counsel to question L.J. outside the presence of the jury. The trial court then sustained the State's relevancy objection, and appellant's counsel subsequently sought permission to question L.J. about whether she had had a homosexual relationship with the friend. The State again objected to the relevance of that line of questioning, which the trial court sustained.
Later during L.J.'s testimony, appellant's counsel approached the bench, and the following colloquy ensued:
MR. HECKER [for appellant]: It is the position of the child that the sexual preference of this young lady is important and that the jury should be able to hear it because it could have a relationship between her testimony and the fact that she just doesn't relate to guys and I would ask that I would be able to ask her if her preference is that she's gay.
MS. JOHNSON [for the State]: Even if she doesn't like guys, it doesn't mean that a guy has a right to grab her breasts.
MR. HECKER: Well, it can have something to do with why she's making this allegation.
THE COURT: I'm not going to allow the question. I don't see the relevance at this point.
MR. HECKER: If I should askcould I ask does she like guys?
THE COURT: No.

Relevancy
In his sole issue, appellant contends that the trial court abused its discretion in denying appellant's request to question L.J. about her sexual orientation in violation of appellant's Sixth Amendment right of confrontation under the United States Constitution and Texas Rule of Evidence 613(b). The State points out that, even though the trial court allowed appellant to cross-examine L.J. outside the presence of the jury, appellant did not make a record of the questions he wanted *355 to propound and the answers she would have given. To preserve error regarding his appellate issue, appellant was required to make a record as to the questions he wanted to ask L.J. and what her answers would have been, or at least what he expected her answers to be. See Johnson v. State, 800 S.W.2d 563, 566-67 (Tex.App.-Houston [14th Dist.] 1990, pet. ref'd). Because he failed to do so, appellant did not preserve error as to his sole appellate issue. See id.
But even if appellant had preserved error, his issue lacks merit. The determination of admissibility of evidence is within the sound discretion of the trial court and will not be overturned so long as the trial court's ruling was within the zone of reasonable disagreement. Lacaze v. State, 346 S.W.3d 113, 120-21 (Tex.App.-Houston [14th Dist.] 2011, no pet. h.). The Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. Smith v. State, 352 S.W.3d 55, 64 (Tex.App.-Fort Worth 2011, no pet.). This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination, as appropriate. See id.
Texas Rule of Evidence 613(b) allows a party to impeach a witness "by proof of circumstances or statements showing bias or interest on the part of such witness," but that rule must be tempered with Rules 402 and 403, which provide that evidence must be relevant to be admissible and even relevant evidence may be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice."[4] TEX.R. EVID. 402, 403, 613(b). "A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify, and therefore, the scope of appropriate cross-examination is necessarily broad." Smith, 352 S.W.3d at 64. But "[t]he proponent of evidence to show bias must show that the evidence is relevant. The proponent does this by demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party." Id.
Appellant argues that he was prevented from exploring a theory that L.J. might have been a homosexual and might have either resented males or resented being touched by males, which might have caused her to exaggerate about the incident in question. But appellant has not shown any connection between L.J.'s sexual orientation, which is not in the record,[5] and any motive for her to testify against appellant. Appellant cites several cases to support his argument that the trial court abused its discretion in excluding this evidence. We discuss each case in turn.
In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court held that the Confrontation Clause required a defendant to be allowed to cross-examine a juvenile witness regarding his probationary status to show the witness's possible concern that he might be a suspect in a robbery for which the defendant was later tried. Id. at 320, 94 S.Ct. 1105. In that case, a safe was stolen from a bar and found near the *356 witness's home. Id. at 309, 94 S.Ct. 1105. The witness identified the defendant as one of two men he purportedly saw "standing alongside a late-model metallic blue Chevrolet sedan near where the safe was later discovered." Id. at 309-10, 94 S.Ct. 1105. The State moved for and was granted a protective order to prevent any reference to the fact that the witness was on probation after having been adjudicated delinquent for burglarizing two cabins when he was 16-years-old. Id. at 310-11, 94 S.Ct. 1105. In opposing the protective order, defense counsel sought to show that "at the same time [the witness] was assisting the police in identifying [the defendant] he was on probation for burglary," thus reflecting the possibility that the witness "acted out of fear or concern of possible jeopardy to his probation," not only to shift suspicion away from himself but also to avoid undue pressure from the police of possible probation revocation. Id. at 311, 94 S.Ct. 1105. Thus, the witness had a clear-cut potential motive to testify against the defendant, and the defendant's interest in showing the witness's bias outweighed the State's interest in preserving the confidentiality of juvenile adjudications of delinquency. Id. at 320, 94 S.Ct. 1105.
In Hammer v. State, 296 S.W.3d 555 (Tex.Crim.App.2009), the Court of Criminal Appeals found the trial court abused its discretion in excluding complainant's medical records from a sexual-assault examination. The defendant was convicted of indecency with a child, his 15-year-old daughter, after the trial court excluded evidence to support the defendant's "defensive theory ... that [the complainant] made up a tale of sexual molestation to get out from under the heavy hand of her father." Id. at 558, 560, 566. The medical records showed she had told the examining nurse that a young man sexually assaulted her, which allegedly occurred one month after moving in with the defendant, her father. Id. at 559, 567. She had also told the nurse that she was particularly angry with her father, who wanted to prove that she had had sexual intercourse. Id. at 567. Another excluded witness was prepared to testify that the complainant said she did not want her dad to know that she was with someone else, so she falsely accused the young man of sexual assault. Id. She also told the nurse that at an earlier time, her uncle had sexually abused her in the very same manner as the defendant was later accused. Id. at 559. While the defendant was allowed to question his daughter generally about her motive to falsely accuse him, the jury did not know that she was particularly angry with him for taking her to the hospital for a sexual-assault exam. Id. at 566-67. She was so upset that she threatened to commit suicide and was admitted to a state hospital shortly afterward. Id. at 567. The sexual assault by the defendant was alleged to have occurred about a month after her release. Id. The Court of Criminal Appeals found that the trial court abused its discretion because there was nothing in the record that would support a finding that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. Id. at 569.
In Vaughn v. State, 888 S.W.2d 62 (Tex. App.-Houston [1st Dist.] 1994), aff'd, 931 S.W.2d 564 (Tex.Crim.App.1996), the court of appeals held that the trial court did not abuse its discretion in allowing the State to cross-examine a defense witness regarding her homosexual relationship with the defendant. Id. at 74-75. The relevance of this testimony was to show the witness's bias toward the defendant due to the close nature of their relationship. Id. at 75. The court cited a number of cases involving evidence of a defendant's relationship with a defense witness that was admissible *357 to show that witness's bias toward the defendant.[6]Id. at 74-75.
Each of the above cases shows a nexus between the witness's testimony and motive to testify in a certain manner. Conversely, here, we see no connection between L.J.'s relationship with her female friend and any motive for her to exaggerate the incident between herself and appellant. See Smith, 352 S.W.3d at 64 (requiring nexus between witness's testimony and witness's potential motive to testify in favor of other party). As a matter of common sense, the nature of this relationshipwhich is unrelated to the incident did not make L.J.'s account of the incident more or less probable. See Fox v. State, 283 S.W.3d 85, 92 (Tex.App.-Houston [14th Dist.] 2009, pet. ref'd) (acknowledging evidence of extraneous acts is admissible when "it tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of any consequence more or less probable than it would be without the evidence.").
Even assuming that L.J. were homosexual, a person's sexual orientation, standing alone, has no bearing on his or her propensity for truthfulness. Chief Justice Oliver-Parrott's concurrence in the Vaughn case is instructive. She wrote separately to explain "the unique reasons why the trial court in this particular case did not abuse its discretion in allowing this evidence of an appellant's private sexual life." Vaughn, 888 S.W.2d at 75 (Oliver-Parrott, C.J., concurring). As she noted, the evidence of the witness's sexual orientation under the circumstances of that case served a purpose other than undermining the credibility of the witness, which was to show the romantic relationship between the defendant and the witness and thus the witness's bias. Id. She elaborated that this should be the exceptional circumstance and not the rule: "In a case where the defendant's sexuality is unrelated to the offense, the judge should presume that evidence of the defendant's sexuality is irrelevant and not admissible." Id.
Injecting evidence of a witness's sexual orientation into trial under circumstances like those presented here would risk derailing the focus of the trial and putting the victim on trial.[7]See TEX.R. EVID. 412(a), (b)(2)(C).[8] Evidence of a person's *358 sexual orientation certainly may be relevant to show bias under unique circumstances like those presented in the Vaughn case, when coupled with some logical connection to the person's motive to testify in a certain manner, but that is not the situation presented here. See id.; see also, e.g., Vaughn, 888 S.W.2d at 74-75. Therefore, the evidence of L.J.'s sexual orientation was inadmissible as irrelevant under Rules 401 and 402.[9]See Smith, 352 S.W.3d at 64 (holding proponent of evidence to show bias must show it is relevant by demonstrating causal connection between witness's testimony and potential motive for testifying).

Conclusion
Appellant did not preserve error regarding his sole issue, and even if he had done so, the trial court did not commit error. Accordingly, we overrule appellant's issue on appeal. The judgment of the trial court is affirmed.
NOTES
[1] Appellant asserts that L.J. told him she went to the nurse's office because she was "not feeling well," but L.J. testified that she went to buy crackers, as the nurse sold crackers and juices to the students, and that she was feeling fine.
[2] Appellant disputes this version of events. He testified to the following. He had merely spoken with L.J. between classes. She told him that she was going to the nurse and then home because she was not feeling well. He then tapped L.J. on the shoulder and told her, "I hope you feel better," and then he ran to make it to class on time.
[3] This videotape is not part of the appellate record and was not an exhibit at trial.
[4] Rule 401 defines "[r]elevant evidence" as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
[5] The trial court did not allow appellant's counsel to ask L.J. about her sexual orientation, but we note that L.J.'s testimony that she spent "all" or even a lot of her time with a female friend does not show that the two had a romantic relationship.
[6] Logan v. State, 698 S.W.2d 680, 682 (Tex. Crim.App.1985); Daywood v. State, 157 Tex. Crim. 266, 273, 248 S.W.2d 479, 483-84 (1952); Denmark v. State, 95 Tex.Crim. 413, 254 S.W. 954 (1923); Sexton v. State, 48 Tex. Crim. 497, 88 S.W. 348, 349 (1905); Thompson v. State, 35 Tex.Crim. 511, 34 S.W. 629, 631 (1896); Crist v. State, 21 Tex.App. 361, 17 S.W. 260, 261 (1886).
[7] We also find the reasoning in Kvasnikoff v. State, 674 P.2d 302 (Alaska Ct.App.1983) to be sound regarding this issue. In that case, the defendant, accused of rape, sought to show that the victim was homosexual and had engaged in other homosexual acts to show that the victim consented to sexual intercourse with him. Id. at 304. The court of appeals upheld the trial court's exclusion of this evidence, stating,

The trial judge in this case was understandably concerned that the main issue in the trial would become the sexuality of the victim rather than the conduct of the defendant on the occasion in question. In addition, the probative value of the evidence was diminished by the fact that none of it involved prior sexual conduct between [the victim] and the defendant. Rather it involved conduct between [the victim] and third persons.
Id. at 306.
[8] In a prosecution for sexual assault or aggravated sexual assault, ... reputation or opinion evidence of the past sexual behavior of an alleged victim of such crime is not admissible.... [E]vidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless ... [among other things not pertinent here] it is evidence that relates to the motive or bias of the alleged victim.

TEX.R. EVID. 412(a), (b)(2)(C).
[9] We also note that, under these circumstances, any de minimis probative value of that information would be substantially outweighed by the danger of unfair prejudice in putting L.J. on trial for her sexual orientation. See TEX.R. EVID. 403.