Affirmed and Opinion filed September
13, 2011.

 

In The

Fourteenth
Court of Appeals



NO. 14-10-00512-CV



in
the matter of o.o.a., appellant



On Appeal from
the County Criminal Court at Law No. 1

Fort Bend
County, Texas

Trial Court
Cause No. 09-CJV-015184



 

OPINION

Appellant O.O.A., a
juvenile, appeals the trial court’s order of adjudication against him for
engaging in delinquent conduct by engaging in sexual contact with a child
younger than 17-years-old.  After the jury found that appellant engaged
in delinquent conduct, the trial court assessed punishment at 24 months’
probation.  In one issue, appellant contends that the trial court erred by
denying appellant’s request to cross-examine the complainant regarding her
sexual orientation.  Because we find such evidence was properly excluded on
this record as irrelevant, we affirm.

Background

As 16-year-old L.J. was
walking to the school nurse’s office between classes on October 9, 2009 to buy
crackers,[1]
she saw appellant walking behind her
within arm’s reach.  L.J. testified that appellant told her that she “was
looking pretty” to which she replied, “Thank you.”  She said that he then
grabbed the back of her shirt and asked if he could give her a kiss.  When she
said “no,” he walked ahead and turned around as if to hug her.  She tried to
push him away, but she testified that he pushed her into the corner, between
the wall and a vending machine across from the nurse’s office.  The vending
machine blocked the view from the nurse’s office of appellant and L.J.  When
appellant had L.J. against the wall, he pulled down the top of her shirt and
one side of her bra.  One breast was exposed, and L.J. testified that he
grabbed and squeezed the exposed breast.  Appellant again asked L.J. to kiss
him.  She was “choking him to get him off” her and “had one of [her] hands . .
. between his neck and chest; and with [her] other hand, [she] was trying to
pull up her shirt at the same time.”  She told appellant “to get his hands off”
her but testified that appellant did not listen.  L.J. then grabbed appellant’s
wrist and removed his hand from her breast.  At some point after that, the door
to the nurse’s office opened, and appellant walked away.[2]  This
incident was recorded in part by a surveillance camera in the hallway.  The
video, which was shown to the jury, shows appellant grabbing L.J.’s arm and the
two of them moving out of view of the camera: it does not show what happened
after that, as the area between the vending machine and the wall was outside
the range of the camera.

L.J. then walked into the
nurse’s office, but did not tell the nurse what happened because there were
other students in the office and she was embarrassed for them to hear.  She
went upstairs to see Robert Banks, an assistant principal, and told him what
had happened.  But she told Banks that she did not want to pursue the matter. 
She testified that she did not know Banks well and was uncomfortable talking to
him because “he’s a man.”  Banks testified that she was visibly shaken, which
was “[d]efinitely out of character” because she was acting “vulnerable,” rather
than ”handling things herself.”  After that, L.J. reported the incident to one
of the police officers at the school.  She felt more comfortable talking to him
than Banks because she knew the officer well and he was a police officer.  She
prepared a written statement and then went to see another associate principal,
Karin Grisdale.  Grisdale testified that L.J. “had been crying” and “was very
upset.”  L.J.’s account of what had happened was consistent each time she
relayed it.  After obtaining permission from L.J.’s mother, Grisdale also took
L.J. to the Children’s Advocacy Center (the Center), where she was interviewed
again.

At trial, defense counsel
asked L.J. about her interview at the
Center, which was videotaped.[3] 
She agreed with defense counsel that during her interview, she had stated that
she spent all of her time with a female friend.  When the State objected to the
relevancy of that line of questioning, counsel told the trial court that he
wanted to show that L.J.’s credibility was at issue because she could not have
spent all her time with this friend, who lived in San Antonio.  The trial court
allowed appellant’s counsel to question L.J. outside the presence of the jury. 
The trial court then sustained the State’s relevancy objection, and appellant’s
counsel subsequently sought permission to question L.J. about whether she had
had a homosexual relationship with the friend.  The State again objected to the
relevance of that line of questioning, which the trial court sustained.  

Later during L.J.’s
testimony, appellant’s counsel approached
the bench, and the following colloquy ensued:

MR. HECKER [for
appellant]:  It is the position of the child that the sexual preference of this
young lady is important and that the jury should be able to hear it because it could
have a relationship between her testimony and the fact that she just doesn’t
relate to guys and I would ask that I would be able to ask her if her preference
is that she’s gay.

MS. JOHNSON [for the
State]: Even if she doesn’t like guys, it doesn’t mean that a guy has a right to
grab her breasts.

MR. HECKER:  Well, it
can have something to do with why she’s making this allegation.

THE COURT:  I’m not
going to allow the question.  I don’t see the relevance at this point.

MR. HECKER:  If I
should ask—could I ask does she like guys?

THE COURT: No.

Relevancy

In his sole issue, appellant contends that the trial
court abused its discretion in denying appellant’s request to question L.J.
about her sexual orientation in violation of appellant’s Sixth Amendment right
of confrontation under the United States Constitution and Texas Rule of
Evidence 613(b).  The State points out that, even though the trial court
allowed appellant to cross-examine L.J. outside the presence of the jury,
appellant did not make a record of the questions he wanted to propound and the
answers she would have given.  To preserve error regarding his appellate issue,
appellant was required to make a record as to the questions he wanted to ask
L.J. and what her answers would have been, or at least what he expected her
answers to be.  See Johnson v. State, 800 S.W.2d 563, 566–67 (Tex.
App.—Houston [14th Dist.] 1990, pet. ref’d).  Because he failed to do so,
appellant did not preserve error as to his sole appellate issue.  See id.

But even if appellant had preserved error, his issue
lacks merit.  The determination of admissibility of evidence is within the sound
discretion of the trial court and will not be overturned so long as the trial
court’s ruling was within the zone of reasonable disagreement.  Lacaze v.
State, No. 14-10-00395-CR, 2011 WL 2638190, at *6 (Tex. App.—Houston [14th
Dist.] July 7, 2011, no pet. h.).  The Sixth Amendment right to confront
witnesses includes the right to cross-examine witnesses to attack their general
credibility or to show their possible bias, self-interest, or motives in
testifying.  Smith v. State, No. 02-09-00394-CR, 2011 WL 2436774, at *7
(Tex. App.—Fort Worth June 16, 2011, no pet.).  This right is not unqualified,
however; the trial judge has wide discretion in limiting the scope and extent
of cross-examination, as appropriate.  See id.

Texas Rule of Evidence 613(b) allows a party to impeach
a witness “by proof of circumstances or statements showing bias or interest on
the part of such witness,” but that rule must be tempered with Rules 402 and
403, which provide that evidence must be relevant to be admissible and even
relevant evidence may be excluded when “its probative value is substantially
outweighed by the danger of unfair prejudice.”[4] 
Tex. R. Evid. 402, 403, 613(b).  “A
defendant is entitled to pursue all avenues of cross-examination reasonably
calculated to expose a motive, bias, or interest for the witness to testify,
and therefore, the scope of appropriate cross-examination is necessarily
broad.”  Smith, 2011 WL 2436774, at *7.  But “[t]he proponent of
evidence to show bias must show that the evidence is relevant.  The proponent
does this by demonstrating that a nexus, or logical connection, exists between
the witness’s testimony and the witness’s potential motive to testify in favor of
the other party.”  Id.

Appellant argues that he was prevented from exploring a
theory that L. J. might have been a homosexual and might have either resented
males or resented being touched by males, which might have caused her to
exaggerate about the incident in question.  But appellant has not shown any
connection between L.J.’s sexual orientation, which is not in the record,[5] and any
motive for her to testify against appellant.  Appellant cites several cases to
support his argument that the trial court abused its discretion in excluding
this evidence.  We discuss each case in turn.

In Davis v. Alaska, 415 U.S. 308 (1974), the
Supreme Court held that the Confrontation Clause required a defendant to be
allowed to cross-examine a juvenile witness regarding his probationary status
to show the witness’s possible concern that he might be a suspect in a robbery
for which the defendant was later tried.  Id. at 320.  In that case, a
safe was stolen from a bar and found near the witness’s home.  Id. at
309.  The witness identified the defendant as one of two men he purportedly saw
“standing alongside a late-model metallic blue Chevrolet sedan near where the
safe was later discovered.”  Id. at 309–10.  The State moved for and was
granted a protective order to prevent any reference to the fact that the
witness was on probation after having been adjudicated delinquent for
burglarizing two cabins when he was 16-years-old.  Id. at 310–11.  In
opposing the protective order, defense counsel sought to show that “at the same
time [the witness] was assisting the police in identifying [the defendant] he
was on probation for burglary,” thus reflecting the possibility that the
witness “acted out of fear or concern of possible jeopardy to his probation,”
not only to shift suspicion away from himself but also to avoid undue pressure
from the police of possible probation revocation.  Id. at 311.  Thus,
the witness had a clear-cut potential motive to testify against the defendant,
and the defendant’s interest in showing the witness’s bias outweighed the
State’s interest in preserving the confidentiality of juvenile adjudications of
delinquency.  Id. at 320.

In Hammer v. State, 296 S.W.3d 555 (Tex. Crim.
App. 2009), the Court of Criminal Appeals found the trial court abused its
discretion in excluding complainant’s medical records from a sexual-assault
examination.  The defendant was convicted of indecency with a child, his
15-year-old daughter, after the trial court excluded evidence to support the
defendant’s “defensive theory . . . that [the complainant] made up a tale of
sexual molestation to get out from under the heavy hand of her father.”  Id.
at 558, 560, 566.  The medical records showed she had told the examining nurse
that a young man sexually assaulted her, which allegedly occurred one month
after moving in with the defendant, her father.  Id. at 559, 567.  She
had also told the nurse that she was particularly angry with her father, who
wanted to prove that she had had sexual intercourse.  Id. at 567. 
Another excluded witness was prepared to testify that the complainant said she
did not want her dad to know that she was with someone else, so she falsely
accused the young man of sexual assault.  Id.  She also told the nurse
that at an earlier time, her uncle had sexually abused her in the very same
manner as the defendant was later accused.  Id. at 559.  While the defendant
was allowed to question his daughter generally about her motive to falsely accuse
him, the jury did not know that she was particularly angry with him for taking
her to the hospital for a sexual-assault exam.  Id. at 566–67.  She was
so upset that she threatened to commit suicide and was admitted to a state
hospital shortly afterward.  Id. at 567.  The sexual assault by the
defendant was alleged to have occurred about a month after her release.  Id. 
The Court of Criminal Appeals found that the trial court abused its discretion
because there was nothing in the record that would support a finding that the
probative value of this evidence was substantially outweighed by the danger of
unfair prejudice.  Id. at 569.  

In Vaughn v. State, 888 S.W.2d 62 (Tex.
App.—Houston [1st Dist.] 1994), aff’d, 931 S.W.2d 564 (Tex. Crim. App.
1996), the court of appeals held that the trial court did not abuse its
discretion in allowing the State to cross-examine a defense witness regarding
her homosexual relationship with the defendant.  Id. at 74–75.  The
relevance of this testimony was to show the witness’s bias toward the defendant
due to the close nature of their relationship.  Id. at 75.  The court
cited a number of cases involving evidence of a defendant’s relationship with a
defense witness that was admissible to show that witness’s bias toward the
defendant.[6] 
Id. at 74–75.  

Each of the above cases shows a nexus between the
witness’s testimony and motive to testify in a certain manner.  Conversely,
here, we see no connection between L.J.’s relationship with her female friend
and any motive for her to exaggerate the incident between herself and
appellant.  See Smith, 2011 WL 2436774, at *7 (requiring nexus between
witness’s testimony and witness’s potential motive to testify in favor of other
party).  As a matter of common sense, the nature of this relationship—which is
unrelated to the incident—did not make L.J.’s account of the incident more or
less probable.  See Fox v. State, 283 S.W.3d 85, 92 (Tex. App.—Houston
[14th Dist.] 2009, pet. ref’d) (acknowledging evidence of extraneous acts is admissible
when “it tends in logic and common experience to serve some purpose other than
character conformity to make the existence of a fact of any consequence more or
less probable than it would be without the evidence.”).  

Even assuming that L.J. were homosexual, a person’s
sexual orientation, standing alone, has no bearing on his or her propensity for
truthfulness.  Chief Justice Oliver-Parrott’s concurrence in the Vaughn
case is instructive.  She wrote separately to explain “the unique reasons why
the trial court in this particular case did not abuse its discretion in
allowing this evidence of an appellant’s private sexual life.”  Vaughn,
888 S.W.2d at 75 (Oliver-Parrott, C.J., concurring).  As she noted, the
evidence of the witness’s sexual orientation under the circumstances of that
case served a purpose other than undermining the credibility of the witness,
which was to show the romantic relationship between the defendant and the
witness and thus the witness’s bias.  Id.  She elaborated that this
should be the exceptional circumstance and not the rule: “In a case where the
defendant’s sexuality is unrelated to the offense, the judge should presume
that evidence of the defendant’s sexuality is irrelevant and not admissible.”  Id.

Injecting evidence of a witness’s sexual orientation
into trial under circumstances like those presented here would risk derailing
the focus of the trial and putting the victim on trial.[7]  See
Tex. R. Evid. 412(a), (b)(2)(C).[8]  Evidence
of a person’s sexual orientation certainly may be relevant to show bias under
unique circumstances like those presented in the Vaughn case, when coupled
with some logical connection to the person’s motive to testify in a certain
manner, but that is not the situation presented here.  See id.; see
also, e.g., Vaughn, 888 S.W.2d at 74–75.  Therefore, the evidence of
L.J.’s sexual orientation was inadmissible as irrelevant under Rules 401 and
402.[9]  See Smith,
2011 WL 2436774, at *7 (holding proponent of evidence to show bias must show it
is relevant by demonstrating causal connection between witness’s testimony and
potential motive for testifying).

Conclusion

Appellant did not preserve error regarding his sole
issue, and even if he had done so, the trial court did not commit error. 
Accordingly, we overrule appellant’s issue on appeal.  The judgment of the
trial court is affirmed.

 

                                                                                    

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

 

Panel consists of Justices Frost, Jamison, and
McCally.

Publish — Tex.
R. App. P. 47.2(b).









[1]
Appellant asserts that L.J. told him she went to the nurse’s office because she
was “not feeling well,” but L.J. testified that she went to buy crackers, as
the nurse sold crackers and juices to the students, and that she was feeling
fine.





[2]
Appellant disputes this version of events.  He testified to the following.  He
had merely spoken with L.J. between classes.  She told him that she was going
to the nurse and then home because she was not feeling well.  He then tapped
L.J. on the shoulder and told her, “I hope you feel better,” and then he ran to
make it to class on time.





[3]
This videotape is not part of the appellate record and was not an exhibit at
trial.





[4]
Rule 401 defines “[r]elevant evidence” as that “having any tendency to make the
existence of any fact that is of consequence to the determination of the action
more probable or less probable than it would be without the evidence.”





[5]
The trial court did not allow appellant’s counsel to ask L.J. about her sexual
orientation, but we note that L.J.’s testimony that she spent “all” or even a
lot of her time with a female friend does not show that the two had a romantic
relationship.





[6]
Logan v. State, 698 S.W.2d 680, 682 (Tex. Crim. App. 1985); Daywood
v. State, 157 Tex. Crim. 266, 273, 248 S.W.2d 479, 483–84 (1952); Denmark
v. State, 95 Tex. Crim. 413, 254 S.W. 954 (1923); Sexton v. State,
48 Tex. Crim. 497, 88 S.W. 348, 349 (1905); Thompson v. State, 35 Tex. Crim.
511, 34 S.W. 629, 631 (1896); Crist v. State, 21 Tex. App. 361, 17 S.W.
260, 261 (1886).





[7]
We also find the reasoning in Kvasnikoff v. State, 674 P.2d 302 (Alaska
Ct. App. 1983) to be sound regarding this issue.  In that case, the defendant,
accused of rape, sought to show that the victim was homosexual and had engaged
in other homosexual acts to show that the victim consented to sexual
intercourse with him.  Id. at 304.  The court of appeals upheld the
trial court’s exclusion of this evidence, stating, 

The trial judge in this case was
understandably concerned that the main issue in the trial would become the
sexuality of the victim rather than the conduct of the defendant on the
occasion in question.  In addition, the probative value of the evidence was
diminished by the fact that none of it involved prior sexual conduct between
[the victim] and the defendant.  Rather it involved conduct between [the
victim] and third persons.

Id. at 306.





[8] 
In a prosecution for sexual assault or aggravated sexual assault, . . .
reputation or opinion evidence of the past sexual behavior of an alleged victim
of such crime is not admissible . . . .  [E]vidence of specific instances of an
alleged victim’s past sexual behavior is also not admissible, unless . . .
[among other things not pertinent here] it is evidence that relates to the
motive or bias of the alleged victim.

Tex.
R. Evid. 412(a), (b)(2)(C).





[9]
We also note that, under these circumstances, any de minimis probative value of
that information would be substantially outweighed by the danger of unfair
prejudice in putting L.J. on trial for her sexual orientation.  See Tex. R. Evid. 403.