**Affirmed and Memorandum Opinion filed January 6, 2022.**



In The

# Fourteenth Court of Appeals

## NO. 14-20-00176-CR

**CHARLES LEE GORDON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 1592107**

## MEMORANDUM OPINION

Appellant Charles Lee Gordon challenges the sufficiency of the evidence in support of his conviction for aggravated sexual assault of a child and contends the trial court abused its discretion by excluding evidence of bias or interest of a witness who testified for the State at trial. We affirm.

### Background

When M.J. was 12 years old, she lived in an apartment with her mother

(Mother), brother, and mother's boyfriend Terry Gordon. Terry's uncle, Jesse Gardner, and appellant, who is Terry's brother, sometimes lived in the apartment.

M.J. testified that one morning before school, she and appellant were the only people in the apartment. According to M.J., appellant entered her bedroom while she was still sleeping, pulled down her shorts and underwear, and pinned her to the bed. Appellant then purportedly removed his own shorts and underwear and sexually assaulted M.J. from behind by penetrating her vagina with his penis. M.J. said that after he ejaculated inside her, appellant got up and left the room. M.J. testified that she then went to the bathroom and cleaned herself with a towel and tried to clean her "insides out" out with a Q-tip. Appellant moved out of the apartment a "couple weeks, maybe a month" later.

Approximately three years later, Mother took her baby son to visit Terry and his mother.[1] M.J. and her best friend J.J. also went but stayed in the car. They saw appellant standing on the front porch. J.J. testified that she saw M.J. staring at appellant, and when J.J. asked, "what's wrong?" M.J. started crying. J.J. said, "when I finally got her to calm down, she just told me a little bit." J.J. encouraged M.J. to tell Mother, which M.J. did a few days later.

After Mother reported the incident to the police, Lisa Holcomb, a forensic interviewer for the Children's Assessment Center, interviewed M.J. M.J. described the incident to Holcomb. M.J. said she was lying in bed one morning before school, and appellant came into the room. She tried to brush him off as he was pulling her pants and shorts down. She was lying on her side, and he was behind her when he inserted his penis into her vagina. She said she just lay there and wished it would be over. Afterwards, she went to the bathroom and cleaned herself

---

[1] Terry and Mother were no longer together at that time, but Terry was the father of M.J.'s brother.

with a Q-tip "because she had white stuff on her."

## *Discussion*

We first address the sufficiency challenge and then the evidentiary challenge.

### I.    Evidence Sufficient to Support Jury's Finding of Guilt

Appellant contends in his second issue that inconsistencies and purported inaccuracies in M.J.'s statements establish that the evidence is insufficient to support the jury's finding of guilt. When reviewing sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational factfinder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as a thirteenth juror and may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the factfinder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Id*. This standard applies equally to both circumstantial and direct evidence. *Id*. Each fact need not point directly and independently to the appellant's guilt so long as the cumulative effect of all incriminating facts is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to the elements of the offense as defined by the hypothetically correct jury charge for the case. *Zuniga v. State*, 551 S.W.3d 729,

3

733 (Tex. Crim. App. 2018). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

A person commits the offense of aggravated sexual assault of a child, in relevant part, if the person intentionally or knowingly "causes the penetration of the . . . sexual organ of a child by any means" and "the victim is younger than 14 years of age." Tex. Penal Code § 22.021(a)(1)(B), (a)(2)(B). Physical evidence is not necessary to affirm a sexual assault conviction. *Bautista v. State*, 619 S.W.3d 374, 378 (Tex. App.—Houston [14th Dist.] 2021, no pet.). Indeed, the uncorroborated testimony of a child seventeen years of age or younger is sufficient to support a conviction for aggravated sexual assault of a child. Tex. Code. Crim. Proc. art. 38.07; *Bautista*, 619 S.W.3d at 378. Courts liberally construe the testimony of child sexual abuse complainants. *Bautista*, 619 S.W.3d at 378.

While recognizing that the complainant's testimony alone is sufficient to support his conviction even without physical evidence, appellant asserts that M.J.'s "recollections were often vague and her statements about key points were often conflicting." Appellant emphasizes the following purported discrepancies in M.J.'s statements.

- Mother told police that M.J. said the assault occurred "one night," but at trial, Mother said M.J. "did not say 'one night.' [M.J.] said one day she missed the bus. It was not at night."

- M.J. did not remember when appellant moved into and when he moved out of the apartment. M.J. only knew appellant as "B.B." and did not know his real name.

- M.J. testified she did not remember how she got to school on the day of the purported offense, but she told the forensic interviewer that

4

Terry's uncle Jesse drove her to school. M.J. could not remember getting a late slip at school that day or what classes she attended.

- M.J. told the forensic interviewer that appellant had tattoos on his arms and chest, but appellant had tattoos only on the back of his arms.

- J.J. testified that M.J. told her appellant inappropriately touched her "over a period of time" and he would touch her "on her private area and breast area." At trial, M.J. testified that appellant did not touch her breast area. J.J. testified that she thought the inappropriate touching began when M.J. was "maybe around 10" years old. But M.J. told Mother and the forensic interviewer that appellant assaulted her only once. J.J. also said she asked M.J. if appellant had sex with her, and M.J. "took a pause and then she looked at me and she didn't want to answer and I asked her again and she was, like, no."

- M.J. testified at trial that she recognized appellant as her purported attacker by his voice.

In making these assertions, appellant asks this court to reweigh the evidence, which we are not authorized to do. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury, as the trier of fact, has the ultimate authority to determine the credibility of the witnesses and to weigh the evidence offered during the trial. *Bautista*, 619 S.W.3d at 379. Because the jury is in the best position to evaluate credibility of the witnesses and the evidence, we must afford due deference to its determination. *See Newby v. State*, 252 S.W.3d 431, 437 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). The law does not require consistent testimony—the law requires only that a rational trier of fact, viewing the evidence in the light most favorable to the verdict, could have found the elements of the crime beyond a reasonable doubt. *Elkins v. State*, 822 S.W.2d 780, 783 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). The jury was entitled to believe all, part, or none of any witness's testimony. *Id*.

Appellant relies on the Court of Criminal Appeals' opinion in *Ex parte*

*Mayhugh*, 512 S.W.3d 285 (Tex. Crim. App. 2016), to support his argument that the evidence is legally insufficient because of inconsistencies in M.J.'s testimony. That case, a habeas proceeding, involves a very different set of facts from the facts of this case. In holding that newly discovered evidence of actual innocence undermined "the legally sufficient, but hard-to-believe version of events" that led to the convictions of four women for sexual assaults of two children, the high court noted that the legal sufficiency standard is not a suitable standard for an actual innocence claim in a habeas proceeding because "no one would ever be found actually innocent on habeas review if the original trial evidence was legally sufficient to support guilt." *Id.* at 288, 298. In concluding that the applicants had met the high burden to establish their actual innocence by clear and convincing evidence, the court relied on evidence that (1) the complainants' father had coerced them to falsely accuse the applicants, had falsely accused others of sexually assaulting his daughters, and was abusive; (2) one complainant recanted her statement but did not do so sooner due to threats from her father; (3) the applicants did not meet the profile of sexual offenders; and (4) new scientific evidence refuted the expert's prior assessment about physical indicators of past trauma, along with the expert's retraction of her prior testimony. *Id.* at 288, 297, 307. Our standard of review on appeal in this case is legal sufficiency, which is very different from the appellate standard of review for actual innocence claims in habeas proceedings. Moreover, this case does not involve false reports of abuse, a recantation by the complainant, or discredited scientific evidence.[2]

Here, the jury heard M.J.'s detailed account of appellant sexually assaulting her. The jury also heard testimony from Mother and M.J.'s best friend, including testimony regarding M.J.'s demeanor when she first disclosed the purported assault

---

[2] Appellant asserts that M.J. also accused Jesse Gardner of abuse, which as we discuss below is not clear on this record.

6

to them. M.J. also provided a detailed account to the forensic interviewer and to a child abuse pediatrician, who both testified at trial. The jury was informed that no physical or medical evidence corroborated M.J.'s account but also heard testimony regarding why that does not eliminate the possibility that a sexual assault occurred, especially in a delayed outcry case such as this one. A police officer assigned to the case also testified it is not unusual in delayed outcry cases like M.J.'s for the complainant not to remember exact dates or certain details. The jury moreover heard appellant's efforts to create doubt about M.J.'s credibility by pointing out possible motivations to lie and contradictions in M.J.'s statements. After hearing all the evidence presented in this case, the jury found appellant guilty of aggravated sexual assault. Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support appellant's conviction. *See Bautista*, 619 S.W.3d at 379. We overrule appellant's second issue.

## II.    Evidence of Witness Bias or Interest

In his first issue, appellant asserts that the trial court abused its discretion in excluding evidence of purported witness bias or interest by Mother. *See* Tex. R. Evid. 613(b)(4) (allowing use of extrinsic evidence to establish witness bias or interest). Specifically, appellant contends that the trial court excluded evidence that Mother (1) ignored a prior allegation that Jesse Gardner abused M.J., and (2) blamed appellant for M.J.'s sexual orientation and behavioral issues in school. According to appellant, the trial court's exclusion of this evidence violated appellant's right to confrontation under the Sixth Amendment of the United States Constitution. The State contends that appellant did not preserve error as to these complaints, but even if he did, the trial court did not abuse its discretion in excluding the evidence.

We presume without deciding that appellant preserved error as to these

7

complaints and address their merits. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the trial court's ruling falls within the zone of reasonable disagreement, we will affirm that decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

Rule 613 permits a witness to be cross-examined on specific instances of conduct when they are used to establish the witness's specific bias, self-interest, or motive for testifying. *Hammer v. State*, 296 S.W.3d 555, 563 (Tex. Crim. App. 2009). Under Rule 613(b), the opponent must first cross-examine the witness with the circumstances surrounding the bias, interest, or motive, and, if the witness denies the circumstances or the motive, the opponent may introduce extrinsic evidence to prove the motive or bias. Tex. R. Evid. 613(b). Based on these principles, a defendant may cross-examine a witness for purported bias, interest, and motive without undue limitation or arbitrary prohibition. *Hammer*, 296 S.W.3d at 563.

The right of confrontation likewise includes the right to cross-examine a witness to test evidence proffered against a defendant. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Thus, the right of confrontation is violated when appropriate cross-examination is limited, and the scope of appropriate cross-examination is necessarily broad. *Id*. "A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias or interest for the witness to testify." *Id*.

That said, the proponent of evidence to show bias must demonstrate that the evidence is relevant. *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004). One does so by establishing that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the

8

other party. *Id*. Moreover, even when a line of inquiry on cross-examination to show bias or interest is relevant, a trial court can exclude the testimony under Rule 403 if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *Hammer*, 296 S.W.3d at 567-68.

**Prior Allegation of Abuse**. Appellant's counsel cross-examined M.J. and Mother about a purported allegation that Gardner had sexually abused M.J. When the trial court sustained the State's relevancy objections, appellant's counsel made an offer of proof. Defense counsel offered the evidence to (1) show that Mother did not believe M.J. when she purportedly accused someone else of abuse; (2) impeach Mother's testimony that M.J. had never made an allegation of abuse against anyone else and to elicit testimony regarding one or more text messages Mother purportedly sent about this purported allegation; and (3) establish a case of mistaken identity. On appeal, appellant contends that the evidence shows that Mother declined to report this allegation against Gardner, which shows Mother had a bias against appellant. Appellant also asserts on appeal that the evidence rebuts Mother's statement that M.J. had never accused anyone of abuse other than appellant. We presume without deciding that appellant's complaints at trial preserved error as to appellant's complaints on appeal.

The proffered evidence on this issue is somewhat muddled. Mother testified during appellant's offer of proof that Gardner's son Quincy was in jail and sent his father a letter stating Gardner "was being accused of being inappropriate with" M.J. Mother intercepted the letter and read it. Mother stated at trial, "I was confused as to why that letter came to my house with those words because no one in my home had ever felt like he was inappropriate with" M.J. but because of the letter, Mother instructed Terry to ask Gardner to move out. Mother testified that

she asked M.J. if there was any truth to the allegation and M.J. said no. Defense counsel also asked Mother about purported text messages she sent to Gardner's family members about the allegation. Mother denied having sent any such text messages. Defense counsel did not otherwise proffer any evidence of text messages.

We cannot conclude on this record that the trial court abused its discretion in excluding this evidence. First, Mother's testimony regarding the purported letter from Gardner's son is not clear—there is no evidence regarding who accused Gardner of inappropriate conduct or giving any context for Quincy's statement. Second, there is no evidence that M.J. herself accused Gardner of anything, so there is nothing to rebut Mother's testimony that M.J. had never made an allegation of abuse against anyone else. Third, there is no evidence that Mother disbelieved M.J.—according to Mother, M.J. denied the allegation. Fourth, there is no proffered evidence that Mother sent any text messages to anyone regarding the allegation. Appellant has not shown on this record how the proffered evidence shows any witness bias or interest by Mother. Accordingly, the trial court was within its discretion to conclude appellant failed to show a logical connection between Mother's testimony on this issue and her potential motive to testify in favor of M.J. *See Woods*, 152 S.W.3d at 111. Moreover, the trial court could reasonably have excluded the testimony under Rule 403 because of its potential for unfair prejudice, confusing the issues, or misleading the jury. *See Hammer*, 296 S.W.3d at 567-68.

**Sexual Orientation and Behavior**. Appellant contends that the trial court abused its discretion in excluding evidence that Mother thought M.J. "was too masculine and feared that she was developing same-sex attractions." According to appellant, his theory at trial was that Mother disapproved of M.J.'s clothing

choices and sexual orientation, which "would support Appellant's theory that [Mother's] actions and responses displayed a bias against her daughter's behavior." According to appellant, Mother was "inclined to pursue assault accusations that would explain when and why [M.J.'s] behavior had changed." Appellant says on appeal he wanted to show that "this behavior had already begun before the alleged abuse and that it was not probative of [M.J.'s] reaction to the incident." Below, appellant argued that the testimony regarding M.J.'s sexual orientation was relevant to show M.J. had a motive to lie to Mother on the basis that "[i]f her mom were to believe that she . . . did not like boys because boys had done something bad to her, that would give her mom a reason to accept the way that [M.J.] was."

We again presume without deciding that appellant's arguments on appeal sufficiently match the objections he made below, but we nevertheless conclude the trial court did not abuse its discretion in excluding the evidence. This record does not establish any nexus between the proffered evidence—Mother's opinion regarding M.J.'s sexual orientation—and Mother's motive to testify against appellant. *See In re O.O.A.*, 358 S.W.3d 352, 357 (Tex. App.—Houston [14th Dist.] 2011, no pet.). As we have noted, when the evidence of a witness's sexual orientation serves no purpose other than to undermine the credibility of the witness, the judge should presume the evidence of the witness's sexuality is irrelevant and inadmissible. *See id*. This information, even presuming that Mother believed something bad happened to M.J. to cause her not to be attracted to men, is too attenuated to show that Mother had any bias against appellant. *See id*.; *see also Mejia v. State*, No. 14-19-00432-CR, 2021 WL 3577659, at *10 (Tex. App.—Houston [14th Dist.] Aug. 10, 2021, no pet.) (mem. op., not designated for publication). As the proponent of evidence, appellant has failed to demonstrate a nexus or logical connection between the proffered evidence and Mother's potential

motive to testify against him. *See Woods*, 152 S.W.3d at 111. Because appellant failed to show this nexus, the trial court did not abuse its discretion in excluding the evidence.

Appellant also contends that the trial court abused its discretion in excluding Terry's testimony that M.J. had behavioral issues in school prior to the purported assault, which appellant offered to rebut the "inference that post-assault trauma caused the behavior." Mother testified that M.J. was generally well behaved until eighth grade, when Mother noticed "behavior changes." According to Mother, M.J. had been "[v]ery happy" before that time and afterward "[s]he would stay to herself. . . . She didn't want to hang out with friends. She just wasn't herself." On cross-examination, defense counsel asked Mother whether M.J. got into trouble at school during seventh grade. Defense counsel specifically asked Mother whether M.J. had gotten in trouble for stealing from a teacher's desk and had been suspended for smoking marijuana at school. Mother said she did not remember that, but when defense counsel approached her with school records, Mother did not dispute it. During appellant's case-in-chief, defense counsel sought to introduce testimony from Terry about the incident. The trial court sustained the State's objection on the basis that testimony was elicited from Mother regarding those specific instances of misconduct, which Mother said she did not recall. The trial court also concluded that Mother's testimony regarding M.J.'s behavioral changes was not inconsistent with the disciplinary action in seventh grade.

We conclude that the trial court did not abuse its discretion in concluding that Terry's testimony was not admissible to rebut the theory that post-assault trauma caused M.J.'s behavior to change. Notably, Mother testified that M.J. became withdrawn after the time of the purported assault. Although Mother testified that M.J. was generally well behaved prior to the eighth grade, defense

12

counsel was allowed to cross-examine Mother regarding the purported incidents in seventh grade, which Mother did not deny. On this record, the jury was not left with a false impression regarding M.J.'s behavior prior to the assault. *See, e.g., Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009) (noting courts generally prohibit a party from using extrinsic evidence to impeach a witness unless the witness's testimony "created a false impression that is directly relevant to the offense charged"). And the proffered testimony from Terry would not rebut the theory that M.J. became withdrawn after the purported assault.

Having concluded that the trial court did not abuse its discretion in excluding the proffered evidence, we overrule appellant's first issue.

## *Conclusion*

We affirm the judgment of the trial court.

/s/  Frances Bourliot
    Justice

Panel consists of Justices Wise, Bourliot, and Zimmerer.

Do Not Publish — TEX. R. APP. P. 47.2(b).